West v. The State.

necessary to complete the deed, the expense is included in that fee. If not necessary, then the purchaser, if for greater security he desired the deed to be acknowledged, must pay for the acknowledgment.

*Browning*, contra, urged that the fee of $1.50 was allowed the sheriff for his trouble in procuring the advertisement of sale to be inserted in a newspaper; but that the printer's bill was an item of expense which he was obliged to incur, and in regard to which he ought to be reimbursed. The fee of $1.50 will not, in many instances, pay the bill of the printer. It is true that costs, at any rate final costs, are by statute only, but expenses stand on a different footing. Thus, in attachment the sheriff is necessarily allowed, for his expenses in keeping the property attached, over and above his taxable costs, and in some instances these expenses are very heavy. The fee is intended to remunerate the sheriff for his trouble, not to pay the printer's bill.

---

## WEST v. THE STATE.

1. It is not necessary in the record of a criminal conviction to state *where* the trial was had. In New Jersey the court can be held at but one place, that designated by statute, and it will be intended that the trial was had there.

2. It is not necessary to aver in the record that the trial jury were "good and lawful men."

3. It is not necessary, except in capital cases, that the court, in pronouncing sentence, should first demand of the prisoner "if he has aught to say why sentence should not be passed upon him."

4. When the sentence inflicts any corporal punishment it is necessary that the prisoner should be present in person; but it is not necessary that this should be averred in express terms in the record; it is sufficient if it can be collected therefrom by fair intendment.

5. A verdict without judgment in civil cases cannot be given in evidence; but in criminal cases it is otherwise, and on a plea of *autre fois acquit* a verdict of acquittal may be given in evidence without judgment thereon: it is therefore no error in a record of conviction that no formal entry of a judgment of acquittal is entered upon the counts on which the defendant was acquitted.

6. Technical errors in the mere making up the record, even in criminal cases, are not to be received with favor; and the better practice is to remit the record for amendment of such defects, even after errors assigned.

7. In an indictment for forgery with intent to defraud, it is sufficient to allege the intent to be " to defraud A," without showing how, or alleging the interest of A in the subject.

8. If an indictment contain some good and some bad counts, a general conviction under it will be sustained.

9. Parol evidence may be given of the contents of a writing, the absence of which is not accounted for, if the object of such evidence is not to prove such facts as the writing would prove if produced, but only a collateral matter, as its identity with or diversity from another writing.

10. On the trial of an indictment for forgery, it is not error to admit proof that the signature of C. S., one of the subscribing witnesses, is not the handwriting of a man named C. S., without first proving that he is the same C. S. who purports to be the subscribing witness: that fact may be made out by after testimony.

11. On an indictment for forging a deed, as a link in the chain of title to a certain tract of land, it is competent to prove that, shortly before the uttering, the defendant said he claimed title to the tract through a different document, and that he was informed that there was no such document in existence.

12. The direction of the *manner* of cross-examining a witness is in the discretion of the court, and error cannot be assigned on matters resting in discretion.

13. A document offered to contradict a witness who referred to such a one, must first be identified as the one referred to by him.

14. To prove handwriting, in general a witness must know it by having seen the person write, or having corresponded with him; but in the case of ancient deeds or papers, so old that no living witness can be produced, the genuineness of handwriting may be proved by an expert, by comparison with papers whose genuineness is acknowledged.

This cause came up by writ of error to the Burlington Oyer and Terminer, removing therefrom into this court the record of the conviction of Joseph E. West, the plaintiff in error, on an indictment for forgery. With the record came up a bill of exceptions, signed by virtue of the act of March 9, 1848, (*Pamph. Laws* 272) which was passed after the trial in this cause, at the November term of the Burlington Oyer in 1847.

The first count in the indictment was in the words following:

Burlington county, ss.—The grand inquest for the state of New Jersey, in and for the body of the county of B., upon their respective oaths and affirmation present, that Joseph E. West, late of the township of N., in the county of B., on the 31st day of August, in the year of our Lord 1844, at the township of N., in the said county of B., and within the jurisdiction of this court, did falsely make, forge, and counterfeit, and did cause and procure tó be falsely made, forged, and counterfeited, and did willingly act and assist in the false making, forging, and counterfeiting, a certain deed of bargain and sale, which said false, forged, and counterfeited deed of bargain and sale is as follows, that is to say: This may certify, that I, John Buffin, of Mansfield, in the county of Burlington, and western division of the province of New Jersey, for the consideration of forty pounds, good and lawful money of said province, to me in hand paid by Daniel Ellis, of the same county, have, and by these presents do grant, bargain, sell, convey, and confirm unto the said Daniel Ellis, his heirs and assigns, all my cedar swamp and pine land on the branches of Northampton river, otherwise called Ancocas, to the southward of Pole bridge branch, laying near to the tracts which he purchased of Japhet Leeds, and of which the sixty acre tract interferes, being surveys made to my father, Michael Buffin, and to me his heir-at-law, to have and to hold the same to him and his heirs for ever.—In witness whereof, I have hereunto set my hand and seal the tenth day of July, one thousand seven hundred and sixty. John Buffin, jun., [L. S.] Sealed and delivered in the presence of Caleb Shreve and

Andrew A. † Bozarth.
his
mark.

With intention to defraud one Israel Kerlin, against the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

The second count of the indictment was for uttering the above forged deed, knowing the same to be forged.

The third count, in the same form as the first, was for "the false making, forging, and counterfeiting a certain certificate

West v. The State.

of the acknowledgment of a certain deed of bargain and sale, which said false, forged, and counterfeited certificate of acknowledgment is as follows, that is to say:

County of Burlington, ss.—Personally appeared before me, the underwritten, one of the judges of the county court for houlding of pleas, John Buffin, the grantor of the within written deed, and did acknoulidge he signed, sealed, and delivrd the same for the uses therein mentioned. Acknoulidged July ye 14th, 1760, before me.—Rob't Smith.

The fourth count was for uttering said forged certificate, knowing the same to be forged, &c.

The fifth count was in the same form as the first, for forging the deed *and* certificate.

The sixth count was for uttering the deed *and* certificate.

In all the counts the intent to defraud was averred in the same language as in the first.

The record of the trial and judgment was in the following words: " And afterwards, *to wit*, at a session of the Court of Oyer and Terminer and General Jail Delivery aforesaid, *to wit*, on the third Tuesday of November, in the year of our Lord one thousand eight hundred and forty-seven, before the justice and judges aforesaid, comes as well the said John C. Ten Eyck, who prosecutes, and as the said Joseph E. West, in their proper persons; and the jurors of that jury, by the said sheriff of the said county of Burlington aforesaid, for this purpose duly summoned, empannelled, and returned, *to wit*, (naming the eleven jurors) being elected, tried, and solemnly affirmed, according to the statute in such case made and provided, to speak the truth of and concerning the premises aforesaid, and the remaining *one* of those jurors, *to wit*, Stacy W. Budd, being elected, tried, and sworn to speak the truth of and concerning the premises aforesaid; and the said jurors, upon their respective oath and affirmation aforesaid, say, that the said Joseph E. West is guilty of the premises in manner and form, as by the second, fourth, and sixth counts of the said indictment aforesaid is supposed against him. And that the said Joseph E. West is not guilty of the premises in manner and form, as by the first, third, and fifth counts of the

said indictment aforesaid is supposed against him: whereupon all and singular the premises being seen, and by the court here fully understood, it is considered by the court here that the said Joseph E. West be imprisoned at hard labor in the state prison of this state for and during the term of five years, and thence stand committed until the costs of prosecution be paid."

During the trial, the following exceptions were taken to the decision of the court on the admissibility of evidence, and bills sealed thereon, under the statute of 1848.

The Attorney General offered as a witness, on the part of the state, Richard Jones, who was duly affirmed, and stated, on his examination in chief, that the defendant had exhibited to him a deed from John Buffin, jun., to Daniel Ellis, previous 'to the finding of the indictment for the tract of land claimed under the deed in question; and, for reasons stated by the witness, he examined the deed particularly, and he stated that that deed was not the same as the deed now in question, alleged to be a forgery to the best of his knowledge: thereupon the defendant objected to witness stating his reasons why he knew it was not the same deed, as it would be proving the contents of said deed, or some part thereof, without the deed being in evidence or its absence accounted for; which objection the court overruled, and the defendant excepted thereto.

The witness then stated that the particular reason why he thinks that deed is not the same as this, that there was an alteration in that not in this, either a small word inserted or interlined: he read the deed several times 'to see if it altered the sense, and did not see that it did; it struck him that it did not appear like the same, though the signature and the appearance were the same; the ink was very black; it appeared altered with a sharp pen, and recently done; is not certain, but thinks the deed was shorter, and folded above the signature; can't say to a certainty, but thinks two lines in this deed, not in that, the line beginning thus, "which were purchased of Japhet Leeds," &c.; his impression is that the township of Hanover, or New Hanover, was that mentioned in the deed, since it purported to be made by John Buffin, jun.; is

entirely certain the deed had the alteration. All this evidence, which related to the contents of said deed, was objected to as incompetent evidence, as the deed had not been produced or its absence accounted for; which objection the court overruled, and the defendant, by his counsel, excepted thereto.

And the Attorney General offered Joshua Forsyth as a witness, who testified as follows: February twenty-fifth next, I shall be sixty-nine years old; I knew Caleb Shreve well, I lived with him from the year 1784 to the year 1792, the time of his death; I used to see him write every day; he kept store, and I was in and out every day; he lived in Mansfield township, in this county; I think he died in 1792; I lived with him when he died.

The witness was here asked by the state to look at the deed alleged to be forged, and say if the signature, Caleb Shreve, one of the subscribing witnesses thereto, was the handwriting of his grandfather Caleb Shreve. Witness, after examining the signature, said, I never saw Caleb Shreve, my grandfather, write such a hand as that; it is not his handwriting; I never knew any more Caleb Shreves before him; he was quite a public man. To this evidence the defendant objected, because the identity of the subscribing witness, Caleb Shreve, with the grandfather of the witness was not established, and it did not appear that the signature of said subscribing witness purported to be the signature of the grandfather of the witness. The court overruled the objection, and allowed the evidence. To this decision of the court the defendant excepted.

And the Attorney General offered George Sykes as a witness, who testified as follows: West called upon me in relation to the land he claimed in the Buffin meadow; it was at Brown's mills, July 6, 1844; I had never before seen West; I accidentally stopped there; as we were about leaving, West told me he had a difficulty about some land with Israel Kerlin, and he wished to employ me to make an exhibition to the court; I then asked where the dispute was; I told him I knew the titles to most of the lands about there, and asked him what he claimed under; he said under a survey to Japhet Leeds, made in 1763. I told him it could not be so, there was no

such survey there.  The defendant objected to the conversa-
tions with the defendant about land, in July, 1844, being given
in evidence, because such conversations were irrelevant; but
the court overruled the objection, and admitted the evidence.
To this decision the defendant excepted.

And the Attorney General offered John M. Sharrock, who
testified as follows:  I reside in Atlantic; I know Joseph E.
West, have known him since 1832; I worked for him six or
seven years during that time; I saw him write a great many
times; I have seen considerable of his writing; I consider
myself familiar with his hand.  [The deed set forth in the
several counts of the indictment being shown to witness.]
The impression that deed makes on my mind is, that it is Mr.
West's writing.  And, being cross-examined, he said : the last
time I saw him write was last fall a year ago, in New York,
at his own house; I saw him write six or seven years ago at
May's Landing; it is because it resembles other writings I
have, I think there is a striking resemblance to West's hand-
writing; I do not know that I have ever seen the writing of
any other man that looks like that.  The witness was here
shown an instrument in writing, a part of the writing being
covered and concealed by a piece of newspaper tied over it,
and was asked by the counsel of the defendant if the portion
of the writing that was visible was West's.  To the question
and mode of exhibiting the paper the counsel of the state ob-
jected, and the court sustained the objection, and decided that
the paper must be so shown that the witness could see the
whole of the writing, and to enable the other party to examine
it, or the paper must be withdrawn.  To this decision the de-
fendant excepted.

The defendant offered as a witness Francis J. Brognard,
previously sworn on the part of the state, and some deposi-
tions, taken before and signed by Joseph E. Potts, a master in
chancery, subscribed by several persons, and among the rest
by Joseph Walker, a witness on the part of the state, who had
testified to West's handwriting, and in cross-examination said,
that he thought he was subscribing witness to some depositions,
and had seen him write then and at other times, which being

shown to said F. J. Brognard, he said, that the signature of Joseph E. Potts, signed to the *jurat* of the deposition of the said Joseph Walker, is the signature of the said Joseph E. Potts. And thereupon such deposition of Joseph Walker was offered in evidence by the defendant, for the purpose of contradicting the evidence previously given by Walker, when examined on the part of the state. The counsel objected to its admission in evidence, as not being identified, and the court entertained the objection, and ruled out the deposition. To this decision the defendant, by his counsel, excepted.

And after the defendant rested, the Attorney General offered John Beatty as a witness to testify as an expert, and to rebut the evidence of Henry B. Hurst, who had testified on the part of the defendant, and also, as an expert, to the signature of John Buffin, jun., to the deed alleged to be forged, and also to the signature of John Buffin, jun., to certain old deeds and papers, marked from No. 1 to No. 6, in all of which he gave it as his opinion that the name of John Buffin, jun., was written by the same hand ; and said that he had been cashier of Mount Holly bank since 1830, that it was his business to examine and detect spurious signatures. He had examined the signature of John Buffin, jun., to deeds No. 2 and 3, and to the deed now in question, and that it was his opinion that the handwriting in the signature No. 2 and 3 was different from that in the signature to the deed in question ; there was a distinct character to No. 2 and 3, though each letter was not alike, there was a sufficient nearness to make them a consistent whole, and to have been written by the same person ; that in the signatures in the deed in question he recognised three distinct styles of writing. Two old deeds being shown to him with the signature of John Buffin, he said that, in his opinion, those signatures were written by the same person who wrote No. 2 and 3, and that the same remark which he had made in relation to the latter deed would apply to No. 7 and 8.

On cross-examination, he said he came to this conclusion purely by comparison from what he saw on the table ; he never saw the signatures of John Buffin, jun., till the papers No. 2 and 3 and the deed in question were recently submitted

to him for examination ; that from the examination of the old signatures to No. 1, 2, and 3, and 7 and 8, he had fixed in his mind such a standard of the signatures of John Buffin, jun., that he could say that the signature to the deed in question was not, in his opinion, that of John Buffin, jun., though he had not the deed to compare with it ; he would be very cautious in case of another signature of a deed, unless he put it alongside and compared it ; that his conclusion in this case was drawn from a comparison of the signatures.

After the testimony of this witness was closed, and after the exceptions herein after made were taken to his testimony, John Gibbs was affirmed as a witness for the state, and testified, that he gave deeds No. 7 and 8 to Mr. Kerlin, the prosecutor ; witness had them in his possession since 1833, before then they were in possession of his father ; knew this at least ten years before that time ; after his father's death they came into witness' possession ; he once held property under them.

Thereupon defendant objected to the evidence of said John Beatty, because he was an expert, and testified only from comparison of handwriting, and that deeds No. 7 and 8 had not yet been proved or given in evidence ; which objections were overruled by the court, to which decision defendant excepted.

The certificate attached to the record was as follows :

New Jersey Supreme Court.—Joseph E. West *v.* The State of New Jersey, on indictment for forgery. In error to the Court of Oyer and Terminer of the county of Burlington. We do hereby certify, that the exceptions to the decisions of the said Court of Oyer and Terminer, taken upon the part of the defendant on the trial of the above stated indictment, and hereto annexed, are well taken. Dated January 3, 1849. Rob. D. Spencer, Garret D. Wall, J. W. Scott, Wm. Halsted.

I do hereby certify, that the foregoing certificate was not presented to the Burlington Court of Oyer and Terminer at the time when the bill of exceptions was presented, but that afterwards, on the settlement of the said bill, at the time and place agreed on by the respective parties, objection was made to allowing or sealing any bill of exceptions ; for the want thereof,

leave was granted to the counsel for the defendant to present said certificate at that time, which was done accordingly. Jos. F. Randolph.

Errors were assigned for causes appearing in the record of the proceedings, for causes appearing on the face of the indictment, and for causes appearing in the bill of exceptions. These errors assigned will sufficiently appear by the argument of counsel and in the opinion of the court.

This cause was argued before the CHIEF JUSTICE, and NEVIUS and OGDEN, Justices, by *W. Halsted* and *Vroom*, for plaintiff in error, and *Browning*, Attorney General, and *W. L. Dayton*, for the state.

*Halsted*, for defendant.

There are six counts, three for forging and three for uttering. The great effort was made on the counts for forging; the verdict was not guilty on these, and guilty of *uttering*.

Our objections are of three kinds:

I. To the record.

II. To the indictment.

III. On the bill of exceptions.

I. To the record.

1. There is in it nothing to show that the court was held at Mount Holly. 4 *Chit. Cr. Law* 374, 394; 1 *Lil. Ent.* 251.

2. The jurors did not *come* to Mount Holly. It does not say they came, nor when they came. *Chit. Cr. Law* 383 (403), 386 (407), 392 (413).

3. The record no where shows that the jurors were good and lawful men; they are not shown to be freeholders, they may have been slaves, or without property. The precedents that omit good and lawful men, are in cases where there was a precept to summon the jury. 4 *Bl. Com., Appendix* 3; 4 *Chit. Cr. Law* 372, 265, 277.

All exceptions to this are where there is a *venire* or *distringas* commanding sheriff to summon lawful men.

4. It does not appear that West was present when judgment was pronounced against him. It does not appear that the court even demanded of him why judgment should not be

pronounced against him.   All the precedents contain this.   1 *Chit. Cr. Law* 567 (1819), 695–6 ; 1 *Ld. Ray.* 267 ; 1 *Salk.* 56 ; *Loft's Rep.* 400 ; *Hawk. P. C.*, b. 2, c. 48, § 17 ; *Skinner* 684 ; 1 *Chit. Cr. Law* 588, 721.

That demand must be made of prisoner.   See *Arch. Cr. Law* 54, " *Pardon ;*" 3 *Mod.* 265 ; 1 *Show.* 132 ; 3 *Com. Dig.* " *Indictment,*" *Judgment, n. ;* 4 *Bl. Com.* 375, *Appendix* 4 ; *Coke's Ent.* 532 ; 1 *Sid.* 85 ; *Rastall's Ent.* 455 ; 2 *Salk.* 630 ; *Stubbs' Cr. Cases* 79 ; 4 *Chit. Cr. Law* 372, 346 ; 1 *Chit. Cr. Law* 587, 720.

5. Although it appears he was found not guilty on three counts, there is no judgment on those counts in his favor.

He cannot plead *autre fois acquit*, unless there be judgment on the verdict.   3 *Ph. Ev. (Cowen)* 1070, *note* 729 ; 1 *Ph. Ev.* 389 ; 1 *Harr. and John.* 253, 405 ; 2 *Bin.* 70 ; 1 *Stark. Cr. Law* 319.

The form of judgment in such cases is found in 1 *Chit.* 719 ; 11 *East* 511 ; *Woodford* v. *Ashley, Coke's Ent.* 356 ; *Rastall's Ent.* 67–8, 51 ; *Arch. Cr. Law* 50.

6. The judgment takes no notice what he was sentenced *for*. He was convicted on three counts, and must have been sentenced on all ; one count bad.   The case of *State* v. *Stone, Spenc.* 404, was on a general verdict.

I do not mean to conflict with that case.   Here is a special finding, guilty on three counts, and not guilty on three counts.

Where there is a general verdict and judgment the court is deemed to have passed sentence on the good counts.   *Wharton's Am. Cr. Law* 619, 620, 622 ; *O'Connell's case*, 11 *Clark and Fin.* 15 ; 9 *Jurist* 30.

The judgment is an entire thing.   The cases cited in *Wharton* 618, are all on general judgment.   In *Farwell* v. *Smith*, 1 *Harr.* 133, judgment in civil action was arrested for this cause.   And see *Coxe* 34.

II.   Objections to form of indictment.

1. To the second count.   It no where appears how a deed, made in 1760, from Buffin to Ellis could be to the prejudice of Kerlin.   The court cannot say upon face of the deed that it was to Kerlin's prejudice ; no pretence that Kerlin had any

West v. The State.

lands there; he had none in fact. There must be an aver-
ment that Kerlin had or claimed *title* to, or *possession in the
land*. It is not like the case of a promissory note. It is an
injury by forging a deed. Injury by passing note is by setting
afloat spurious money. How can a deed be *uttered* until de-
livery and title passed. All the uttering proved was that he
showed the deed. 2 *Stark. Cr. Law* 506, 527–8; 3 *Chit. Cr.
Law* 1063; *Crown Cir. Comp.* 344; *People* v. *Wright*, 9
*Wend.* 193; *People* v. *Galloway*, 17 *Wend.* 540; *People* v.
*Stearnes*, 21 *Ib.* 409.

The intention to defraud must be proved as laid. *Leach*
76–7, *Powell's case*.

This doctrine has never been applied to a deed for land. See
*Fitzgibbon* 57; *Rex* v. *Crone, S. C.*, 2 *Stran.* 901; 1 *Stark.*
181; *Whart. Cr. Law* 138; 1 *John.* 66; 13 *Mass.* 245; 1
*Richardson's Rep.* 219; 1 *Leach* 48; 9 *East* 446, *contra*; *Fos-
ter's Cr. Law* 116, *Lewis's case* 118.

2. As to the fourth count. A certificate of acknowledgment
does not fall within any of the classes of instruments made
the subject of forgery. *Rev. Stat.* 271. It is not mentioned;
if embraced, it must be by terms "*record*" or "*authentic
writing of a public nature.*" This is *neither*. It is not a record
or authentic writing, unless it is averred to be taken before a
person having lawful authority to take it. It must also be put
upon *record before it is a record*. There is no averment that
Smith was authorized to take acknowledgment; certificate does
not state it; it might have been helped by averment.

The property conveyed is not stated to be in New Jersey,
nor even that it was for land. There is not any power to ac-
knowledge it, except it is a deed of land, and of land in New
Jersey. In 1760, a judge of the pleas was only authorized to
acknowledge a deed for lands in the county in which he lived.
*Allinson* 132. This act was in force till 1799, and only gave au-
thority to take acknowledgment of deeds of *lands*. In *Pat.* 398,
§ 2, we find a special act authorizing judges to take acknow-
ledgment of deeds of lands in other counties. *Rex* v. *Wilson*,
1 *Russ. & Ry.* 50. There must be a valid instrument, or no

indictment for forgery.   2 *Stark Cr. Law*, No. 145, *p.* 523 ; *Ib.* No. 146, *p.* 526.

There is no allegation of any genuine instrument of which this is a counterfeit.   Nor is it mentioned that Kerlin had any interest in the land.   9 *Wend.* 193, *People* v. *Wright.*

Can this deficiency be supplied by parol.   *Hunter's case*, 2 *Leach* 624 ; *Thompson's case*, 2 *Leach* 910 ; *Wall's case*, 2 *East Cr. Law* 953 ; 1 *Leach Cr. Law* 431 ; 1 *East Cr. Law* 954 ; 3 *Chit. Cr. Law* 1041 (*Eng. ed.*) ; 2 *Russ. on Cr.* 1484.   Forgery cannot be committed, except of legal instrument.   2 *Russ.* 1452 ; 2 *East Cr. Law* 953, 961 ; 1 *Leach* 431 ; *Wharton's Cr. Pr.* 339 ; 1 *Russ. & Ry.* 193–5.   It may be alleged that courts are to presume that judge acted within scope of his authority.   3 *Barr.* 329, *Hazelton Coal Co.* v. *Ingham.*

3. The sixth count charges uttering deed and certificate in one count.   All objections to this exist which went to the fourth count.   If any one bad, whole judgment is clearly bad.

III. Objections arising out of *exceptions.*

The admission of incompetent evidence.

The court ruled that a part of a paper could not be covered up, and opinion asked as to the balance.   Part of letter can be shown.   *Stark. Ev.* 174, *Quin's case.*

The court also admitted the evidence of Jones, contents of another deed, with no notice to produce it.   3 *Cowen's Phil. Ev.* 1210, 1212 ; 9 *Wheaton* 558 ; 1 *S. & R.* 27 ; 3 *Ib.* 191.

The court admitted the evidence of John Beatty, founded on comparison of writing.   How far is comparison of handwriting competent, in a criminal case, to *prove forgery ?*   3 *Halst.* 87, *Goldsmith* v. *Bain* ; 4 *Wash. Rep.* 731, *United States* v. *Craig* ; 2 *Stark. Ev.* 374, 378, " *Handwriting ;* " 2 *Ib.* 331, " *Forgery ;* " 1 *Denio* 343, *People* v. *Spear ;* 1 *Dana's Rep.* 179 ; 7 *Peters' Rep.* 763 ; 1 *Car. & K.* 433, *Carey & Pitt ;* *Nor. Peake, Appendix* 25 ; 7 *Car. & P.* 548, *Bromage* v. *Rice ;* 5 *Ad. Ellis* 514 ; 1 *Greenl. Ev.* § 580, 581 ; 8 *Mees. & W.* 123.

There was an attempt to legalize this evidence by evidence after the decision.   Admitting the deeds to be genuine deeds

West v. The State.

of John Buffin, still the question is, is it *this* John Buffin? 7 *Ala. Rep.* 701, *Smith* v. *Armisted;* 5 *Ad. & El.* 751 ; 4 *Bain & Al.* 330 ; 4 *Esp.* 113 ; 10 *Cl. & Fin.* 154.

*Browning,* Attorney General.

It appeared that deed was in existence more than two years before finding indictment, therefore jury obliged to acquit by statute of limitations. It was proved that deed was uttered and published as true within two years.

Objections to indictment.

1. Second count. It is insisted that the party charged to be defrauded must be shown to have interest in the land. All the authority for that position is in relation to indictments framed under 5 *Eliz.*

Under that statute it was held necessary to state interest of party in the land. *Stat.* 5 *Eliz.*, to be found in 3 *Chit. Cr. Law* 458, 1032 ; 2 *Stat. at Large* 556.

And see 2 *East* 915 ; *Stark.* 515, *note;* 20 *Wend.* 420, *Arch. Cr. Pl.,* "*Forgery;*" 3 *Chit. Cr. Law* 1043 ; 2 *Leach C. C.* 76, 90 ; 2 *W. Bl.* 787 ; 1 *Stark. Cr. Law* 111 ; 2 *Stark. Cr. Law* 505 ; *East P. C.* 988–9, 92 ; 2 *Stark. Cr. Law* 507.

Fourth count. *Rev. Stat.* 271, § 48. The words of statute are " authentic matter of a public nature." This is a public matter. 4 *Bl. Com.* 247, *note; Wall's case,* 2 *East Cr. Law* 953, where the indictment sets out that it is a writing of a public nature.

Sixth count. Both instruments set out *in hæc verba.*

Objections to the record.

The caption. *State* v. *Gustin,* 2 *South.* 746 ; *State* v. *Price,* 6 *Halst.* 203 ; *State* v. *Berrian,* 2 *Zabr.* 9.

2. Continuances. 1 *Trem. P. C.* 223 ; *Stubbs* 28, 75, 79, 83, 85, precedent of present record ; *State* v. *Price,* 6 *Halst.* 203.

3. Defendant not at bar ; and it does not appear that he was called on to say why such judgment should not be pronounced. That proclamation is only to be found in judgments in capital cases. *Stubbs' Crown C. C.* 28, 75, 83 ; *Wharton's Cr. Law* 155. All judgments are in *this form.* Judgment, so far as it goes, is good. 1 *Trem. P. C.* 162.

III. Bill of exceptions.

As to Jones' evidence, the whole object was to show that the deed was different from the one on the table. The object was to show that at the time he had not this deed, but another.

As to the cross-examination, it showed part of writing concealed, and the mode of examination is matter in the discretion of the court. 1 *Greenl. Ev.* § 431.

As to *Beatty's* testimony. Experts always give opinion. Physicians do it. 3 *Halst.* 87 ; 1 *Greenl. Ev.* § 578. Section 581, read by opposite counsel, does not refer to experts. 1 *Phil. Ev.* 491–2 ; 8 *Wend.* 431–2 ; *Jackson* v. *Brooks, Buller's N. P.* 236 ; 7 *East* 232, *note a ;* 14 *East* 327 ; 8 *Price* 650 ; 1 *Denio* 343 ; 2 *Stark. Ev.* 678.

*Dayton,* for state.

I. As to the *indictment.* It is alleged necessary to set out character of Kerlin's interest. No advantage in setting it out. *Arch. Crim. Pl.* 232. In *Wall's case,* (cited) (2 *East* 953) interest is not stated.

Admitting count to be bad, the principle is well settled, that if one count good, the conviction is good.

As to the instrument not being named in statute. See 2 *Leach* 883, 910 ; 2 *H. P. C.* 842 ; 1 *East* 181. ; 2 *Chit. Cr. Law* 1035–9 ; *Foster's Cr. Law* 116 ; *Leach* 83, 175 ; 2 *East* 951 ; 20 *Wend.* 419.

II. Record.

As to place not stated. See 4 *Bl. Com., Appendix ; Arch. Forms* 98.

As to there being no judgment of acquittal. Suppose he ought to have judgment on these three counts, does it follow that judgment must be reversed ?    8 *T. R.* 112 ; 5 *Cowen* 654 ; 2 *Saund.* 101. Judgment may be affirmed in part, and reversed in part.

*Vroom,* for plaintiff in error.

I. Record.

Technical errors are *substantial* in criminal cases. The place of trial should appear with reasonable certainty. *Stubbs* 83 ; 4 *Chit.* 384 ; 3 *Ld. Ray.* 18. There has been a uniform mode of making up records. Shall we depart from forms ?

As to pleading at the bar.   See 3 *Mod.* 265.   Judgment reversed because question was not asked.   This is a case for which at common law a man may be convicted capitally.

Judgment only on three counts.   See *Law of Error* 46 ; 2 *Russel* 389 ; 1 *Stark. Cr. Pl.* 298, &c.

II. As to the objections to the indictment.   See 1 *Rush* 357 ; *Cro. Car.* 326 ; 1 *Bac. Ab.* 65 ; 2 *Bulstrode* 137 ; 1 *Lev.* 138 ; 1 *Sid.* 442 ; 3 *Bac. Abr.* 279, " *Forgery,*" *B ;* 9 *Cowen* 778 ; 12 *Serg. & Rawle* 237.

The CHIEF JUSTICE delivered the opinion of the court.

The numerous errors assigned in this cause consist of three classes.   They relate—I. To the formality and sufficiency of the *record ;*   II. To the validity of the *indictment ;*   III. To the legality of the proceedings upon the trial ; and we propose to consider them in the order in which they are stated.

I. The first and second errors assigned to the sufficiency of the record are, that it does not aver that the court at which the trial was had, was held at Mount Holly (the place designated by law), nor that the jurors summoned to try the cause came to Mount Holly.

The record sets out, in usual form, that the indictment was found at a Court of Oyer and Terminer and General Jail Delivery holden at Mount Holly, in and for the county of Burlington, on the third Tuesday of August, 1846 ; that afterwards, at the same term, the defendant was arraigned, and pleaded not guilty.   It then sets forth the postponement of the cause, by the usual continuances, from term to term, until the third Tuesday of November, 1847 ; the award of a *venire* returnable on that day at Mount Holly ; and that the trial was had at a session of the court holden on the day specified, without averring at what place the session was held.

Where the cause is tried at the same term at which the indictment is found, without any continuance, it is not usual to specify the place at which the court is held, otherwise than in the commencement of the caption.   4 *Bl. Com., Appendix,* § 1 ; 4 *Chit. Cr. Law* 384, 386 ; *Cr. Cir. Comp.* 88 ; *State v. Price,* 6 *Halst.* 204.

But where the cause is continued from term to term, or from one day to a subsequent day in the same session, but at a different place, the precedents usually specify at what place each successive term or sitting of the court is held. 4 *Chit. Cr. Law* 380, 381, 387, 402; *Cr. Cir. Comp.* 83; 1 *Tremaine's P. C.* 161.

It will be observed that in many of the precedents the continuances are to different places, no two successive continuances being to the same place. The place of the holding of the court is not fixed and unchanging. At each adjourment, the time and place to which the cause stands adjourned is designated and specified on the record, and the record avers that each successive session was held at the time and place to which the adjournment was made. Under such circumstances, the propriety of specifying at each successive term the place at which the court is held is obvious. Under our statute, the place of the sitting of the court is fixed. The court, as appears by the record, was not continued to a special term, but until the next regular term. The time and place of holding the term is ascertained. The court is adjourned to no specified time or place, but to meet "according to law." Moreover the award of the *venire*, as entered upon the record in this case, is that "a jury of the country thereupon come before the justice and judges aforesaid, at the next session of the Court of Oyer and Terminer and General Jail Delivery to be held at *Mount Holly*, in and for the county of Burlington, on the second Tuesday of November, 1847, by whom," &c. And the record sets forth that, at a session of the court holden on the day specified in the award of the *venire*, the jurors of that jury being duly summoned, empanneled, and returned, also come, &c. Under the award of the *venire* contained in the record, the jurors of that jury could not be *duly summoned, empannelled*, and *returned* at any other place except Mount Holly. With these averments on the face of the record, the place of the sitting of the court being fixed and determined, it appears with reasonable and convenient certainty, that the court was held, and the trial had at Mount Holly.

In the case of *The State* v. *Price*, 6 *Halst.* 205, the record

does not state, even in the award of the *venire*, to *what place* the jury are to come; which is uniformly stated in the English precedents, even when the trial is held at the same term. 4 *Bl. Com., Appendix*, § 1 ; 4 *Chit. Cr. Law* 384, 386.

The third error assigned is, that it is not shown by the record that the jurors by whom the indictment was tried were *good and lawful men.* The record, in this respect, is fully sustained by the precedents. It is not usual to aver in terms upon the record, that the jurors by whom the cause is tried are good and lawful men. That averment is uniformly made touching the grand jury, but not so in relation to the petit jurors. The record here, as elsewhere, contains the averment, that the jurors, duly summoned, empannelled, and returned for the trial of the cause, were *elected* and *tried ;* which is a substantial averment that they were good and lawful men. Nor is this averment omitted, as was suggested on the argument, only where the award of the *venire* requires that the jurors shall be good and lawful men. Many of the precedents contain no such averment, even where the qualification is omitted in the award of the *venire.* 1 *Lil. Ent.* 241 ; *Cr. Cir. Comp.* 28, 75, 78, 83.

The fourth error assigned is, that it does not appear that the court demanded of the defendant, before passing sentence, why judgment should not be pronounced, or that the defendant was present in court when the judgment was rendered. It is not necessary, except upon *a capital charge*, that the defendant should be asked if he had any thing to offer why judgment should not be pronounced against him. 4 *Bl. Com.* 375 ; 2 *Hale's P. C.* 401, 407, 408 ; 1 *Chit. Cr. Law* 720.

It is, however, necessary in all cases where any corporal punishment is to be inflicted upon the defendant, that he should be personally before the court at the time of pronouncing sentence, and it should so appear by the record. *Hawk. P. C., b. 2, c. 48,* § 17 ; 1 *Ld. Ray.* 267 ; 1 *Salk.* 56 ; 1 *Chit. Cr. Law* 695, 721.

But it is not necessary that it should be averred in express

terms that the defendant was present when the judgment was pronounced. It is sufficient if it can be collected by fair intendment from the record. When the record sets forth that it was demanded of the defendant why judgment should not be pronounced, it is not averred that the defendant was personally present. The reasonable intendment is, that the demand was in open court, and that the defendant was there personally present. It appears by the record in this case, that the defendant was personally present in court on the third Tuesday of November, the day of trial, and on that day the judgment purports, on the face of the record, to be rendered. The record averring that he was present at the trial, and on the day on which judgment purports to be rendered, the legal intendment is, that he continued in court, and was present at the rendition of judgment. It is no answer to say, that peradventure the court adjourned from day to day. The complaint is not of the facts, as they really occurred, but of the defect apparent in the record.

Under the former act constituting courts for the trial of small causes, it was necessary, to entitle the defendant to an appeal, that he should have been present at the rendition of the judgment; and that fact must appear on the record, or the court of appeal has no jurisdiction. Being a question of jurisdiction, the right of appeal must clearly appear. Yet if it appear by the record that the defendant appeared at the trial, and judgment was thereupon rendered without an adjournment to a future day, or, in case of an adjournment, that the defendant appeared in court on the day to which the cause was adjourned, it has always been held that the record shows with sufficient certainty that the defendant was present at the rendition of the judgment. *Vandoren* v. *Vandoren*, 5 *Halst.* 286 ; *Reeves* v. *Wilson*, 2 *Green* 116.

The application of this principle fully sustains the validity of the record in the present case. In legal contemplation the term is but one day.

The fifth error assigned is, that no judgment appears to have been pronounced on the three counts upon which the defendant was acquitted. And it is insisted that the defendant

cannot avail himself of the record upon a plea of *autre fois acquit* in regard to the offences charged in those counts.

In civil cases it is true that ordinarily a verdict is not admissible in evidence, unless judgment has been pronounced. But in criminal cases the better opinion seems to be, that it is not necessary, in order to sustain a plea of *autre fois acquit*, that judgment should be rendered on the former verdict. The verdict itself constitutes the bar. *State* v. *Benham*, 7 *Conn.* 418; 3 *Phil. Ev.* (*Cowen*) 955, *note* 692; *Whart. Cr. Law* 155.

The reason why a verdict alone, without the judgment, is inadmissible in evidence, is because judgment may have been arrested or a new trial granted. The record of a judgment is therefore required. 1 *Greenl. Ev.* § 510; 1 *Phil. Ev.*, (*Cowen*) 389.

But in the present case the objection is not applicable. Here is a record competent to be offered in evidence. It appears by that record that a verdict had been pronounced, and that judgment final in the cause had been rendered. There can be no new trial or arrest of judgment. And no court with that record before it, and with the evidence that the defendant had been tried and acquitted, would ever permit the defendant to be deprived of the benefit of his plea, or of any substantial right whatever, because the judgment of discharge was not formally spread upon the record. In point of fact such judgment is never pronounced. I find no valid objection to the sufficiency of the record.

It may be remarked, in regard to all of this class of objections, that they are purely formal. The objections are not, that in point of fact, the trial did not take place at Mount Holly, or that the jurors were not good and lawful men, or that the defendant was not present at the time judgment was pronounced. But the objections consist in this, that it does not properly appear to this court, by the record, how the facts really were, in other words, that the record has not been made up in technical form. In point of fact, records in criminal cases, not capital, are never made up except there be a writ of error. They are made up by the clerk, or more usu-

ally by the attorney, months, or even years, after the rendition of the judgment. To many clerks criminal records are entirely unknown, and comparatively but few attorneys are at all familiar with the forms. In matters so highly technical, and with which the clerk has no familiarity, errors can scarcely be avoided. Under such circumstances, to discharge a defendant when there is no substantial error, when there has been a fair trial upon a legal presentment, upon the mere ground of a technical omission in the record, without affording an opportunity of amendment, seems an unnecessary, if not an unwise deference to legal technicalities. It is sacrificing the substance to the shadow, substantial justice to mere form. Neither the ends of justice nor the substantial rights of parties are promoted by such means. The court sits in judgment rather upon the skill or the ignorance of the clerk, than upon the guilt or the innocence of the defendant, the legalities of his trial, or the fairness of the proceedings by which his guilt was established. Under the operation of a severe penal code, where the defendant was put upon trial without the aid of counsel, some reason may have existed for this technical strictness, which certainly has no application to our penal code, or to the practice under it.

We are of opinion that the ends of justice would be better promoted, the law more effectually enforced, and no substantial right of the defendant entrenched upon, by giving an opportunity, in all cases where exceptions are taken to the form of the record, to apply to the court below to have the record amended, according to the truth and the fact of the case. To permit the record, after remaining open for months, to be shaped and moulded at the discretion of the clerk or attorney, and then the moment it is signed to invest it with such solemnity that no relief can be had against its omissions or its errors, savors more of scholastic refinement than of sound judicial wisdom. The course suggested was adopted by the Court of Errors of this state, in the case of *The State* v. *Carter*, upon an indictment for murder, and we see no sound objection to the practice.

II. Under the exceptions taken to the validity of the in-

dictment, it is assigned for error that the second count is defective, because it contains no averment that Kerlin (the party who it is alleged was intended to be defrauded) had or claimed title to, or possession of, the land pretended to be conveyed; nor does it show upon its face that he had any interest whatever in the said land.

Whether this objection be valid depends entirely upon the legal effect and operation of the statute upon which the indictment is founded.

It is usually sufficient if an indictment be so framed that the offence is described in the words of the statute, or according to its legal effect and operation. 2 *East's Cr. Law* 989.

It is invariably requisite that all the ingredients which constitute the offence should be set out in the indictment with certainty and precision. 1 *Chit. Cr. Law* 169; *Arch. C. P.* 15, 16.

Thus, in an indictment for forgery, it is necessary to aver that the act was done with intent to defraud, for that is made by the statute an essential ingredient of the offence. But how, or in what manner the party was to be defrauded, is no ingredient of the crime, and, all the authorities agree, need not be set out in the indictment. *Arch. C. P.* 23, 194; 2 *East's Cr. Law* 989. § 59; *King* v. *Powell,* 2 *W. Blac.* 787; 1 *Leach* 215; *Rex* v. *Goate,* 1 *Ld. Ray.* 737.

The real question presented by this assignment of error is, whether, under the statute of New Jersey against forgery, (*Rev, Stat.* 271, § 48,) it is necessary to constitute the offence, that the party intended to be defrauded should have any interest whatever in the land pretended to be conveyed.

The English statute, 5 *Eliz. c.* 14, 2, (2 *Stat. at Large* 556,) prohibits the making or forging of any false deed, &c., " to the intent that the state of *freehold or inheritance* of any person in any lands, or the right, title, or interest of any person in the same, shall or may be molested, troubled, defeated, recovered, or charged." The third section of the same act makes it penal for any person to forge or make any false charter, deed, or writing, to the intent that any person shall have or claim any estate or interest *for term of years* of, in, or

to any lands. The precedents framed upon the second section of this statute uniformly set out the title of the party whose estate in the land was intended to be molested. 2 *Stark. Cr. Law* 481 ; 2 *Chit. Crim. Law* 1062 ; *Crown Cir. Com.* 344.

The reason and necessity of this averment is apparent from the provisions of the statute. The offence defined by the act consists in the making of the false or forged instruments, with the intent that the estate of a person having a freehold or inheritance in the land be molested or changed. It is an essential ingredient in the offence that the act should be done with intent to molest the estate of a freeholder, and that fact must appear upon the face of the indictment.

The statute upon which the present indictment is founded (*Rev. Stat.* 271, § 48,) prohibits the false making, altering, forging, or counterfeiting of any deed, &c., with intent to prejudice, injure, damage, or defraud any person or persons, body politic or corporate. The statute, is very similar in its terms to the English statute, 2 *Geo.* 2, c. 35, and was manifestly designed to embrace a class of cases not within the statute of Elizabeth. The latter statute contemplates solely an act done with design to molest an estate of freehold. The statute of New Jersey has no such limitation, but prohibits the act, if done with intent to defraud any one. To limit its operation to persons having an interest in the same, or any other land, would greatly narrow its operation, and defeat its most important objects. It would be, moreover, in direct contravention of the plain language of the act. In order to put such construction upon the statute, it would be necessary to show that no one could be defrauded by a forged deed, unless he had an interest in the land pretended to be conveyed, or in some other land, to the prejudice of which the forged instrument might operate. But it is too obvious to admit of controversy, that fraud, by means of a false or forged deed, may be committed, not only upon the person having title to the land, but more readily and more certainly upon persons who are induced to loan or advance money upon the faith of the pretended title. Such cases come clearly within the plain *terms*

and obvious meaning, and, as we apprehend, within the effect and operation of the statute.

If such be the true construction of the act, it can neither be necessary nor advisable to set out upon the indictment the title of the person intended to be defrauded. It is not necessary, because the fact averred is no essential ingredient of the offence. It is not advisable in any case, even when such interest exists, because, if stated, the proof must tally with the averment, or the defendant will be acquitted. 2 *East's Cr. Law* 988

But it is further insisted, that there should appear upon the face of the indictment some apparent connection between the transaction complained of and the party to be defrauded; and it is objected, that it does not appear how a deed from Buffin to Ellis, bearing date in 1760, can operate to defraud Kerlin.

But the cases all agree that it is not necessary to show upon the face of the indictment *how* or *in what manner* the party is to be defrauded. That is matter of evidence upon the trial. It is enough, if by possibility he may be defrauded, upon the face of the indictment. That it is not necessary to show upon the face of the indictment any apparent connection between the transaction and the party to be defrauded, is apparent from the precedents. Thus a defendant is charged by indictment under the statute, 2 *Geo.* 2, *c.* 35, with forging a bill of exchange, in the name of A. M., upon R. G., with intent to defraud A. S. 2 *Stark. Cr. Pl.* 493.

Now if the act were charged to have been done with intent to defraud the drawer or endorser of the bill, there would have been upon the face of the indictment an apparent connection between the transaction and the person intended to be defrauded. But there is no apparent connection between the transaction, as stated in the indictment, and A. S., not a party to the bill.

So for forging and uttering a receipt from T. F. to J. B., with intent to defraud T. B. 2 *Stark. C. P.* 495; *Cro. Cir. Comp.* 387.

So in Anne Lewis' case, the indictment is for uttering a forged deed purporting to be a power of attorney from Eliza-

beth Tingle to Frederick Predham, with intent to defraud Edward Mason.   *Foster's Cr. Law* 116.

So under a statute of Pennsylvania, the indictment charged that the defendant falsely altered and defaced the registers and records of the office of the surveyor general of the commonwealth, by the following corrupt interlineation : "*April*, 1794, *A. R. in right of A. S.* 161 *acres, and* 95 *perches*," with intent to defraud G. K.   *Ream* v. *Commonwealth,* 3 *Ser. & R.* 207 ; *Whart. Prec.* 139.

It was suggested, upon the argument, that a different form of indictment was necessary where the instrument alleged to be forged respected real estate.   But why so ?   No such rules exist at common law.   1 *Trem. P. C.* 135.   The statute draws no distinction between the two classes of instruments.   It seems difficult to perceive why a different phraseology should be required in indictments to describe offences which the statute describes in language identical.   No reason for the distinction was suggested upon the argument, and I apprehend none exists in fact.

The doubt respecting the form of the indictment has probably arisen from precedents of indictments under the statute of Elizabeth, and which have in some instances, either from abundant caution, or perhaps from inadvertency, been applied to offences under the statute of *Geo.* 2.

This count being in the terms of the statute, including all the essential ingredients of the offence, and being in accordance with approved precedents under similar statutes, we are of opinion that this error cannot be sustained.

This conclusion renders it unnecessary to express any opinion upon the other counts of the indictment.   It has been long and well settled, that where the defendant is found guilty upon several counts, some of which are bad, judgment may be rendered upon the good counts.   1 *Bos. & Pul.* 187 ; 1 *Chit. Cr. Law* 249–50 ; 1 *Salk.* 384.

And where judgment has been pronounced upon an indictment containing several counts, some of which are bad, the judgment will not be reversed on writ of error, but the court will apply the judgment to the good counts.   1 *John.* 320 ; 17

*Pick.* 80 ; 3 *Wend.* 365; 6 *Metc.* 240 ; *Spenc.* 404; *Whart. Cr. Law* 618, 619.

This rule cannot be considered as unsettled by the recent decision in the House of Lords in the case of *Rex* v. *O'Connell,* 11 *Clark & Fin.* 15.

The distinction suggested, upon the argument, between a general verdict of guilty, and a verdict of guilty upon certain specified counts, cannot alter the application of the principle. The verdict was in the latter form in O'Connell's case, but that circumstance does not appear to have been relied on as affording any ground for the opinion of the majority of the court.

In the case now under consideration, the sentence pronounced is authorized by law to be awarded in regard to the offence specified in the second count. The offence charged in the three counts upon which the defendant is convicted is virtually the same, and the punishment would have been the same whether the defendant had been convicted upon one count or upon all.

III. The third class of errors relates to the legality of the trial, and are founded upon bills of exceptions sealed by the court, pursuant to the act of March 9, 1848. *Pamph Laws* 226.

1. The first exception is, that parol evidence was admitted of the contents of a deed, without the proof of notice to produce it. It appears, by the record, that the witness had testified that the defendant exhibited to him a deed, from Buffin to Ellis, for the land described in the deed in controversy, and that he believed that the deed thus exhibited was a different deed from that charged to be a forgery. The witness then stated the grounds of his belief that the deeds were not the same, to be, that in the deed exhibited there was an alteration, a small word, interlined ; that it was shorter, and folded above the signature ; that the township of Hanover, or New Hanover, was mentioned, and that the deed before the court contained two lines which were not in the deed exhibited to witness. All this evidence was objected to because the deed itself was not produced, nor its absence accounted for. It is

not clear what contents, if any, of the absent deed were proved. But, conceding the fact to be as alleged, the evidence does not fall within the principle of the objection. The contents of that deed were not in question before the jury. The parol evidence was not offered as a substitute for the written instrument, nor to contradict or alter it. Nor does it fall within the objection, that it was not the best evidence. It was a simple question of identity or diversity. The witness had sworn that he believed that the deed in question was not identical with a deed which had been previously seen by him, and, in stating the grounds of his belief, he enumerated a variety of particulars, in which according to his recollection, the two instruments differed. Now the production of the deed before the jury would have been no evidence whatever of the grounds of his belief, though it might either have confirmed or contradicted his impressions.

The second exception is, that the court admitted evidence to show that the signature, *Caleb Shreve,* as one of the subscribing witnesses to the deed charged to be forged, was not the signature of Caleb Shreve the grandfather of the witness, though the identity of the subscribing witness to the deed with the grandfather of the witness had not been established.

The decisive answer to the objection is, that the evidence is competent as far as it goes; though not an entire chain, it is a complete link in the chain. The fact stated was competent and relevant. To how much weight it might eventually be entitled, would depend, doubtless, upon how strictly the state identified the subscribing witness with the person referred to. This witness states that he never knew any other Caleb Shreve before him. Had another witness testified that no other Caleb Shreve resided in that region of country at the date of the deed, it could not be denied that the entire evidence would be both relevant and material, though the testimony of each witness standing alone might be indifferent, and the whole united not conclusive. It is incumbent upon a party complaining of an error, to show clearly that the error was committed. As the case stood, the judge clearly committed no error in admitting the evidence. The whole evidence is not required to be spread upon the bill of exceptions. How fully the identity

was established, this court cannot know. The mere admission of testimony in itself competent, but which becomes irrelevant or incompetent by the failure of some essential link in the chain, is no ground for reversal.

The third exception is to the admission of the evidence of George Sykes, who testified, that in July, 1844, the defendant called on the witness in relation to the land he claimed in the Buffin meadow. He told witness that he had difficulty about some land with Israel Kerlin. Witness told him he knew the title to most of the land about there, and asked him what he claimed under. Defendant said under a survey to Japhet Leeds, made in 1763. Witness told him it could not be so, there was no such survey there. The ground of exception to this evidence is, that the conversation detailed was irrelevant.

The defendant stood charged with making and uttering a forged deed from Buffin to Ellis to defraud Kerlin. The uttering is alleged to have taken place on the 31st of August, 1844. Upon this issue it was certainly not irrelevant to show that, within two months of the alleged uttering of the forged deed, the defendant had claimed title to the tract in question, not under a deed from Buffin to Ellis, in 1760, but under a survey of Japhet Leeds, in 1763, and that he was then informed that there was no such survey as that under which he pretended to claim. But it is alleged that the tracts referred to in the conversation were in *Buffin's meadow*, and must therefore have been different from the tracts included in the deed, which are described as cedar swamp and pine land. The answer is, that the tracts described as cedar swamp in 1760 may have been converted into meadow before 1844, and that the tract known as *Buffin's meadow* may have included within its limits cedar swamp and pine land, as well as meadow. The identity of the two tracts may have been fully established upon the trial. It is enough for this court to see that there is no evidence upon the record that they were not the same.

The fourth exception is, that on a cross examination, by the defendant, of a witness on the part of the state, and who had testified that the deed alleged to be forged was in the handwriting of the defendant, the witness was shown an instrument of

writing, a part of the writing being covered and concealed by a piece of newspaper tied over it, and was asked by the counsel of the defendant if the portion of the writing that was visible was West's, the defendant's. To the question and mode of exhibiting the paper, the counsel of the state objected. The court sustained the objection, and decided that the .paper must be so shown that the witness could see the whole of the writing. In this there was no error. It does not clearly appear for what purpose the evidence was offered. It may have been to prove the instrument shown, for the purpose of offering it in evidence, or it may have been, as was probably the case, for the purpose of testing the value of the witness' opinion in respect to the handwriting of West, and discrediting him before the jury. If the former were the object, the witness could form and express his opinion only upon the whole writing. If the latter, the better opinion seems to be, that the party was entitled to lay the paper before the jury, to form their opinion as to the testimony of the witness, and therefore the whole paper should be shown. For the jury should not judge, from the inspection of the entire instrument, of the value of the opinion of a witness who has only seen a part of it.

But admitting that the witness is not, as a general rule, entitled to see the entire instrument, it is clearly the duty of the court to see that the paper is so exhibited as to enable the witness to judge of its general character, and that the cross-examination is so conducted as fairly to test the value of his opinion. This must be left, in some measure, to the discretion of the judge, and if he err in a matter of discretion, his opinion is not subject to review. 1 *Greenl. Ev.* § 431.

The propriety of the decision must necessarily depend upon circumstances of which this court can have no knowledge. What was the extent of the writing? what part of it was shown? was it sufficient to enable the witness fairly to judge of the character of the writing?

The fifth exception is, that the deposition of Joseph Walker, offered by the defendant for the purpose of contradicting the evidence previously given by said Walker, on the part of the state, was overruled by the court.

What evidence the deposition was designed to contradict, or whether it was material or relevant to the issue, does not clearly appear. The only evidence of Walker contained in the bill of exceptions is, that having testified to West's handwriting on cross-examination, he said he thought that West was a subscribing witness to some deposition, and that witness had seen him write *then* and at other times. The design of offering the deposition seems to have been to show that West's handwriting was not upon it, and thus to contradict the witness. The objection was, that the deposition offered was not identified as the one referred to by the witness; and the objection seems well founded, for there appears upon the record no evidence whatever of the identity of the instruments.

The last ground of exception is the admission of the testimony of John Beatty, "because he was an expert," and testified only from comparison of handwriting, and because two of the deeds (from which he formed his opinion) had not been proved or given in evidence. It appears by the record that the latter ground of objection was removed, upon the trial, by proof of the deeds. The question presented by the record, in connection with the facts, as there disclosed, is, whether upon an indictment for forgery of an ancient deed, in regard to which, from lapse of time, all personal knowledge may be presumed to be lost, it is competent to establish the forgery by the testimony of an expert, who has no previous knowledge of the handwriting, but who speaks entirely from comparison of the handwriting in the instrument alleged to be forged with that in other ancient deeds or writings admitted or proved to be genuine.

The general rule of the common law, that handwriting is not to be proved by comparison, has been fully recognized in this state, and is not now questioned. The proof must be by a witness having proper knowledge of the party's handwriting, acquired either by seeing him write, or by correspondence or other business transactions with him, from which a personal knowledge of the character of the handwriting is acquired.

Where, however, the writings are of such antiquity that

living witnesses cannot be had, the rule is, and from the very necessity of the case must be, relaxed. In such cases the course is to rely upon the testimony of experts, who testify concerning the genuineness of the instrument in question by comparison with other documents admitted to be genuine, or proved to have been treated and acted upon as such. Or the expert may speak from a knowledge of the handwriting, acquired by a *previous* inspection of such ancient writings. 7 *East* 282, *note a;* 14 *East* 327; 1 *Phil. Ev.* 491; *Greenl. Ev.* § 578; *Jackson* v. *Brooks,* 8 *Wend.* 426, *S. C.;* 15 *Wend.* 111; *Strother* v. *Lucas,* 7 *Peters* 767; *Rout's administrator* v. *Riley's administrator,* 1 *Leigh* 222.

The deed alleged to be forged bears date in 1760, and clearly comes within the reason and operation of the rule. Of the handwriting in a document so ancient, no living witness could speak otherwise than by comparison. If the evidence be rejected, no direct evidence of the forgery is attainable.

In the cases cited the evidence was offered in civil suits, in order to prove the genuineness of the signature. But if evidence by comparison is properly admitted in such case to prove the genuineness of a signature, the same kind of evidence must also be admitted to prove that the signature is not genuine. 1 *Phil. Ev.* 492.

The general rules of evidence are the same in criminal and civil cases. What may be received in the one case, may be received in the other, and what is rejected in the one, ought to be rejected in the other. 2 *Stark. N. P.* 155; *Roscoe's Crim. Ev.* 1; *Buller's N. P.* 235; *Doe* v. *Newton,* 5 *Adol. & El.* 514; *Doe* v. *Suckermore,* 5 *Adol. & El.* 703.

We find no error, either in the frame of the indictment, the making up of the record, or in the exceptions sealed upon the trial, and are of opinion that the judgment be affirmed.

NEVIUS and OGDEN, Justices, concurred.

Judgment affirmed.

CITED *in State* v. *Norton,* 3 *Zab.* 47; *Dodge* v. *State,* 4 *Zab.* 464; *Johnson* v. *State,* 2 *Dutch.* 321; *Donnelly* v. *State, Id.* 471.