COMMONWEALTH *vs.* JOHN F. COSTELLO.

Suffolk.    April 3. — May 19, 1876.    COLT & LORD, JJ., absent.

An indictment may contain two or more counts alleging distinct offences, if they are of the same general description, and the mode of trial and the nature of the punishment are the same.

An instrument falsely made, with intent to defraud, is a forgery, although, if it had been genuine, other steps must have been taken before the instrument would have been perfected, and these steps are not taken.

The written application to a master in chancery, under the St. of 1870, c. 291, by a defendant, who wishes to give a bond to dissolve an attachment, need not be signed by him.

Real property was attached as the property of A., standing in the name of B. The condition of a bond given, under the St. of 1870, c. 291, § 3, to dissolve the attachment, was that if A. and B. should pay to the plaintiff a sum stated, (being the amount at which the property was appraised,) if he should recover so much therein,

or any amount not exceeding that sum, within thirty days after final judgment, the bond should be void, otherwise to remain in full force. *Held,* that the bond was valid.

An indictment for the forgery of a bond to dissolve an attachment need not set forth how the bond could have been used to defraud.

On the trial of an indictment for forging and uttering a bond to dissolve an attachment of real estate, a bond was produced with an approval annexed, while that alleged in the indictment was without an approval. *Held,* that the approval did not constitute a part of the bond, and that there was no variance. *Held, also,* that the approval might properly be put in evidence as bearing upon the question of the intent with which the bond was made.

On the trial of an indictment for forging and uttering an appeal bond, the government offered evidence tending to show that the name of one of the sureties affixed to the bond was fictitious, by proving who the person really was, who represented himself by the fictitious name to the clerk of the court, in which the bond was given, and that his statements as to his business, residence, occupation and ownership of property were false. *Held,* that the evidence was competent, although the defendant admitted that the name was fictitious.

On the trial of an indictment for forging and uttering a bond to dissolve an attachment of real estate, it appeared that the signature of one of the sureties was fictitious. The defendant contended that the person signing the fictitious name had assumed it before this transaction; and asked the presiding judge to instruct the jury that they must find that the person assumed and used the fictitious name for the purposes of fraud in this particular case, and that it was not enough to constitute forgery, if he had previously assumed and used the same name for the purposes of crime or fraud generally. The judge declined so to instruct the jury, but did instruct them that, although a party might sign or use a fictitious name which he had adopted, for innocent purposes, he could not acquire a right to use it for fraudulent purposes by so using it any number of times. *Held,* that the defendant had no ground of exception.

INDICTMENT for forgery, in four counts. The first count charged the defendant with making, and the second with uttering, a bond of the tenor following:

"Know all men by these presents, that we, Marion Pearce and John F. Costello, of Boston, in the county of Suffolk and Commonwealth of Massachusetts, as principals, and William P. Schell and Isaac Judson, of said Boston, as sureties, are holden and stand firmly bound and obliged unto John Belcher, of Winthrop, in the county of Suffolk and Commonwealth aforesaid, in the full and just sum of thirty-six hundred dollars, to be paid unto said John Belcher, his executors, administrators or assigns : To which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals. Dated

the twenty-fourth day of February, in the year of our Lord one thousand eight hundred and seventy-five.

" The condition of this obligation is such, that whereas said John Belcher has caused the goods and estate of said Marion Pearce to be attached as the estate of John F. Costello to the value of ten thousand dollars, to be attached on mesne process, in a civil action, by virtue of a writ bearing date the fifth day of February, A. D. 1875, and returnable to the Superior Court next to be holden at Boston within and for the county of Suffolk, on the sixth day of April next ; in which said writ said John Belcher is plaintiff, and said John F. Costello is defendant ; and whereas the said defendant wishes to dissolve the said attachment, according to law, on one house and the land attached, being numbered 26 Cooper Street in said Boston, from said attachment,

" Now, therefore, if the above bounden Marion Pearce and John F. Costello shall pay to the plaintiff in said action the amount of thirty-six hundred dollars, if he shall recover so much therein, or any amount not exceeding thirty-six hundred, within thirty days after the final judgment in said action, then the above written obligation shall be null and void ; otherwise to remain in full force and virtue.

<div style="margin-left:auto;">

" Marion Pearce.    . [Seal.]

" John F. Costello.    [Seal.]

" William P. Schell. [Seal.]

" Isaac Judson.    [Seal.]
</div>

" Signed, sealed and delivered in presence of

" John F. Fenton,

" J. E. Fitzgerald,"

" Suffolk, ss.   Feb. 25, A. D. 1875.

" The above named sureties are approved by me.

" J. E. Fitzgerald, Master in Chancery."

The third count charged the defendant with making, and the fourth count with uttering, a bond of the tenor following :

" Know all men by these presents, that we, Amelia H. Costello, of Boston, in the county of Suffolk and Commonwealth of Massachusetts, wife of John F. Costello (53 Maverick Street), as principal, and William P. Schell, of Cl elsea, in Suffolk

County, residing at 24 Linwood Avenue, doing business at 23 Doane Street, Boston, as surety, are holden and stand firmly bound and obliged unto James M. Carter, in the full and just sum of one hundred dollars, to be paid unto the said Carter, his executors, administrators or assigns; to which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals, dated at Boston, the eleventh day of March, in the year of our Lord one thousand eight hundred and seventy-five.

" The condition of this obligation is such, that whereas the said Carter, by the consideration of the Justices of the Municipal Court of the city of Boston, holden at said Boston, within and for the county of Suffolk, for civil business, on the tenth day of March, in the year of our Lord one thousand eight hundred and seventy-five, recovered judgment against the said Amelia H. Costello, for the sum of one cent damages, and costs of suit, taxed at twelve dollars and thirty-seven cents, also for a return irrepleviable of the goods described in the writ, to wit, one set china, lavender-band crockery ware, comprising dinner set, in a personal action, brought by said Amelia H. against said Carter, in which the said Amelia H. set her damages at two hundred and fifty dollars. From which judgment the said Amelia H. appealed to the Superior Court to be holden at said Boston, within and for the county of Suffolk, for the transaction of civil business, on the first Tuesday of April next. Now if the said Amelia H. Costello shall do and prosecute her said appeal at said Superior Court with effect, and pay all such costs as may arise after said appeal, then this obligation to be void; otherwise to abide in full force, power and virtue.

<div style="text-align:right">

" Amelia H. Costello.  [Seal.]

" Wm. P. Schell.  [Seal.]

</div>

" Signed and sealed in presence of

" J. L. Eldridge, to A. H. C.

" W. T. Connolly to W. P. C."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment for the following reasons:

" 1. The indictment, as to all the counts, is wanting in due precision and certainty in not setting forth how the bonds were required, how they could be given, or how they could be effective for any purposes, or how they could be valid for the purposes intended.

" 2. There is nothing set forth therein to bring the false making of the instruments within the St. of 1870, c. 291, §§ 2, 3, 4, 5, 6, or any other specific statute.

" 3. There is nothing therein set forth to show that the false instruments are such as, if genuine, would be valid for the purposes intended.

" 4. The want of validity or value of the instruments appears on their face ; the instrument of the first and second counts, because it does not appear to have been approved by John Belcher, or by the proper officer, or by any person ; nor does the notice required by law appear to have been waived, and because said instrument could not effect any fraud.

" 5. The condition inserted in the instrument is not the condition required by the statute, and it does not appear that the instrument was given, or could be given, by the defendant, in accordance with the provisions of the statute.

" 6. The indictment avers the false making of a bond, and not the false making of a bond or writing obligatory ; the words ' or writing obligatory ' being descriptive of the word bond in the statute, and the word ' bond ' is broader.

" 7. There are no such averments therein of other facts, not expressly mentioned in the statutes, as will bring the case within the true meaning of the statutes.

" 8. Because the third and fourth counts allege the false making of a bond, and the instrument appears to be a recognizance and a record of a court.

" 9. Because it is no offence to utter and publish a false instrument of no validity.

" 10. Because the first and second counts set forth two felonious acts, and the third and fourth counts two other distinct and felonious acts, and the same are not parts of the same act or transaction, and said counts are improperly joined.

" 11. Because there is no averment that the different counts describe the same act or transaction."

*Colburn*, J., overruled the motion, and the defendant excepted. The defendant was then tried, and a bill of exceptions, in substance as follows, was allowed:

The judge declined to order the government to enter a *nolle prosequi* as to either count or set of counts, or to elect upon which it would proceed, or to grant a separate trial, holding the two distinct felonies to have been rightfully joined. It was conceded that the two felonies charged in the different counts were separate, distinct and independent, and not depending on the same facts or transactions, save that the same person signed as William P. Schell in each bond. The forgery relied upon by the government at the trial consisted, as was claimed, in the fact that a person, whose name was actually Frank Hayes, signed under an assumed or a fictitious name as one of the sureties, signing himself as Wm. P. Schell, in the presence, and by the procurement, of the defendant, with the intent to defraud, the said name of Wm. P. Schell representing, and intending to represent, no other existing person.

The suits, in which the bonds were given, are sufficiently described in the conditions of the same. By the return of the officer in the suit of Belcher against Costello, it appeared that real estate was attached as belonging to the defendant, but standing in the name of Marion Pearce. None of the proceedings in the other suits were put in evidence, except the bond.

The government was allowed to introduce in evidence, against the defendant's objection, a written application to Mr. Fitzgerald, the master in chancery, for the dissolution of the attachment in said suit, the same being personally presented by the defendant to the magistrate, but never signed; also the appraisal of the three appraisers appointed by Mr. Fitzgerald, and sworn by him, and the bond itself, with proof that the latter had been delivered to the clerk of the court where the suit was returnable.

The defendant objected to the admission of the bond to dissolve, because of a variance; the copy embodied in the indictment showing an approval erased, and the paper procured having an approval not erased. The judge cverruled the objection.

The government put in evidence the notice to Belcher, and an officer's return thereon, with evidence that the same was duly

returned to the magistrate; it then was allowed to show, against the defendant's objection, that no service was made on Belcher, but that one McMahan personated Belcher falsely, and that said Hayes, by arrangement with McMahan, and (as was contended upon the evidence in the case) by the procurement of the defendant, pointed McMahan out as said Belcher to the constable, and the service was made upon him, and Belcher never heard or knew anything about it. The judge admitted this evidence on the question of intent.

The defendant contended that the appeal bond was not authorized by law, and was void; so that it would not be forgery of the signature, nor if the name of the surety was fictitious as contended. The papers in evidence, relating to the dissolution of attachment, stated hereinbefore, were the only ones relating to that subject.

The government was allowed to show, against the defendant's objection, that said Hayes, whose signatures were claimed to have been forgeries, appeared before Mr. Fitzgerald, and in the presence of the defendant testified, under oath, that his name was William P. Schell; that he lived at No. 13 Windsor Park, Boston Highlands; that he owned house and lot No. 44 Chester Avenue, Chelsea; that, before the clerk of the court, in which the appeal bond was given, he testified, in presence of the defendant, that he was a coal-dealer, and did business at 23 Doane Street, Boston, and lived at 13 Linwood Avenue, Chelsea. The defendant contended that these statements, being made under oath and in course of an examination before the magistrate and clerk, were not competent evidence against him, as no assent to the same on his part could be implied.

The government was then allowed, against the defendant's objection, to prove, by other evidence, that these several statements of Schell were not true, as tending to prove that he was a fictitious person. The defendant, in objecting to this evidence, said that he admitted now that William P. Schell was not the real name of said person who signed the bonds; but that that was an assumed name under which he signed. The judge held the evidence competent, notwithstanding his admission and the claim on the part of the government as to what the forgery consisted of.

The defendant contended, and asked the judge to rule, that the bond to dissolve an attachment, upon the evidence, was invalid in law, and did not and would not, if the signatures were genuine, operate to dissolve the attachment, but the same remained, and would remain, in force notwithstanding, for the following reasons: that there was no written application signed by any one, or the party applying; that notice was not waived, and none was given, as was conceded, to Belcher; that there was no written warrant or authority given to the appraisers; that the bond, its condition, and the other proceedings were not in conformity to the statute. The defendant contended that, this being so, the attachment would not be dissolved or affected by it; that, if the signatures were genuine, the bond would not affect the attachment, and if valid for any purpose it would only give additional security, so that in fact there was no fraud in that respect.

The judge was asked to rule upon this subject and these questions; but he declined doing so, saying to the jury, substantially; that all he proposed to say upon these subjects was, that the jury were to take and consider the bond as sufficiently valid to be the subject of forgery, the same as if it were in fact a promissory note attempted to be forged; that the jury were to assume this to be so, both as regards the forgery and the uttering charged, and the question of intent.

The defendant contended that it did not appear that Hayes assumed and used the name of William P. Schell for the first time and for the purpose of fraud in this particular case; but that it appeared that he had assumed, and gone by, the name before; that his life had been irregular and he had been leading a criminal life, living with a woman not his wife, and occupying with her different rooms in various places apart from his relatives and friends, and concealed from them and those who knew him as Frank Hayes. But the government contended that the name of William P. Schell had only been used in these transactions with the defendant. The judge was requested by the defendant to instruct the jury, that they must find that Hayes assumed and used this fictitious name of Schell for the purposes of fraud in this particular case; and that it was not enough to constitute forgery if he had previously assumed and used the

same name for the purpose of crime or fraud generally. But the judge ruled otherwise, and instructed the jury that a party might assume and use and sign an assumed or a fictitious name which he had adopted generally for innocent purposes, instancing Samuel M. Clemens's assumption of the name of Mark Twain, so that either name would not be a forgery; but that this would not be so if the name had been assumed and used previously solely for the purpose of fraud and crime; that a party cannot acquire a right to use it for fraudulent purposes by using it any number of times solely for fraudulent purposes.

The jury found the defendant guilty upon all the counts; and the defendant alleged exceptions.

*A. A. Ranney & J. L. Eldridge*, for the defendant, upon the question of the joinder of counts, cited *Tweed's case*, 60 N. Y. 559; *State* v. *Porter*, 26 Misso. 201; *Hampton* v. *State*, 8 Humph. 69; *M' Gregg* v. *State*, 4 Blackf. 101; *Baker* v. *State*, 4 Pike, 56; *Kane* v. *People*, 8 Wend. 203; *State* v. *Fowler*, 8 Fost. 184; *State* v. *Lincoln*, 49 N. H. 464; *Regina* v. *Davis*, 3 Fost. & Finl. 19; *Regina* v. *Barry*, 4 Fost. & Finl. 389; *The King* v. *Roberts*, Carth. 226; *The King* v. *Clendon*, 2 Ld. Raym. 1572, *Rex* v. *Benfield*, 2 Burr. 980; *Young* v. *The King*, 3 T. R. 98, 105; *O'Connell* v. *The Queen*, 11 Cl. & F. 155; 1 Bishop Cr. Pro. (1st ed.) §§ 205–213.

*C. R. Train*, Attorney General, for the Commonwealth.

DEVENS, J.    1. The first inquiry presented by the exceptions is whether the counts for forging and uttering the bond to dissolve an attachment in the suit of Belcher against Costello, which purported to run to John Belcher, might properly be joined in one indictment with the counts which allege the forging and ttering the bond which purported to run to James M. Carter, and to be given on condition of prosecuting an appeal to the Superior Court from the Municipal Court of the city of Boston, the offences charged in these two sets of counts being distinct criminal acts.

It has long been common in practice in this Commonwealth to include in one indictment charges of distinct substantive acts, even when such acts are felonious in their character, if they are of the same general description, and the mode of trial and the nature of the punishment are the same.    The correctness of this

has been recognized fully by several decisions of this court, and it has been held, as it is competent for the court, if it sees any danger that the defendant will be embarrassed by the multiplicity of the charges against him, to direct the government to proceed upon one count or set of counts only, that no rights of the defendant are imperilled thereby. *Carlton* v. *Commonwealth*, 5 Met. 532. *Booth* v. *Commonwealth*, 5 Met. 535. *Josslyn* v. *Commonwealth*, 6 Met. 236. *Commonwealth* v. *Cain*, 102 Mass. 487. *Commonwealth* v. *Sullivan*, 104 Mass. 552. Nor has the matter of the joinder of offences, distinct and separate in their character, been in any way changed by the St. of 1861, *c.* 181, but continues to stand exactly as it did previously to this enactment. We are aware that a different result from that to which we have arrived has been reached by courts of some other states ; but, without undertaking to discuss the cases cited by counsel, or their argument in detail, we remain satisfied with the rule which has heretofore been adopted by the tribunals of this Commonwealth.

2. It is contended that the bond alleged to have been intended to dissolve the attachment, could not have operated so to do, and that, as it was void for that purpose, (the steps requisite to give it final validity not having been taken,) there could have been no forgery of it. It is true that the false making of an instrument merely frivolous, or one which upon its face is clearly void, is not forgery, because from its character it could not have operated to defraud, or been intended for that purpose ; but, if the instrument is one made with intent to defraud, although, before it can have effect, other steps must be taken or other proceedings had upon the basis of it, then the false making is a forgery, notwithstanding such steps may never have been taken or proceedings had. So if, with this intent, it is to be or has been connected with facts, the existence of which are essential to its validity, which are merely simulated so that it would not be operative even if truly signed, because such facts had no actual existence, it is still a forgery. If, for instance, there had been no actual notice to the attaching creditor, a party having been employed (as there was evidence tending to show had been done in this case) falsely to personate him, the bond could not operate as against him to dissolve the attachment; yet if the false mak-

ing of the bond was one of the steps by which, in connection with this fraud, a pretended dissolution of the attachment was to be effected with a fraudulent intent, such making is not the less a forgery, because the previous fraud would have rendered the bond inoperative to dissolve the attachment, even if the signatures had been real.

It is objected that there was no application to the master signed by the defendant, by which any proceeding to dissolve the attachment by giving bond could have been initiated. But there was a written application by the defendant, and this is all that the statute requires; it was not necessary that it should have been signed by him. *Coddington* v. *Goddard*, 16 Gray, 436. The defendant further contends that, before the bond could have been operative, there must have been an approval of it by the master, which does not appear by the indictment to have been done. It is not, however, uncommon, to have a bond prepared before the steps necessary to give it validity are actually taken; and if this is made falsely, it may be used to defraud by causing such steps to be thereafter taken. Had the bond been sufficient, and had the defendant obtained the approval of it by the master, upon the return of the appraisal he would have obtained an apparently good record title, which could have been used to deceive any person disposed to purchase that which had been attached.

It is further argued that the bond was on its face invalid, and could not therefore have been a forgery. The bond was given under the St. of 1870, c. 291, § 3, and was intended to dissolve an attachment of real property alleged to have been fraudulently conveyed. It differs from the bond therein provided for in this, that, while it binds the obligor to pay what the obligee shall recover, not exceeding $3600, it does not provide that the plaintiff shall establish his title to the land, against the person holding the record title thereto, by a writ of entry. It therefore imposes upon the signers thereof a heavier responsibility than they are compelled to take in order to dissolve the attachment; but this omission would not render the bond, if truly signed, less a valid one for the purpose of dissolving the attachment. If, in order to enforce the bond, the plaintiff were not compelled to bring a writ of entry, he could not object to it on that account. The

suggestion that it bound the obligors to pay $3600 in any event, is not well founded. While this portion of the bond is awkwardly expressed, its evident meaning is that the obligors shall pay the amount recovered, not exceeding $3600.

How this bond could have been used to defraud need not have been set out in the indictment in detail; it was enough that it appeared from the character of the instrument, together with the provisions of the statute, that it might have been so used, in connection with other facts, real or simulated, either then existing or with which it was to be afterwards connected. *Commonwealth* v. *Hinds,* 101 Mass. 209, 211.

3. The considerations which have been suggested, as to the counts of the indictment relating to the bond to dissolve the attachment, dispose of the objections in regard to the counts relating to the appeal bond.

4. The defendant relies upon an alleged variance between the bond to dissolve the attachment, as set forth in the indictment, and that produced at the trial, the former being a bond without an approval, and the latter with an approval annexed. But the approval does not constitute a part of the bond, and it was not necessary in the indictment to aver that it had actually been approved, because, as before held, if made fraudulently with intent that it should be approved, it was a forgery ; and if offered for approval, it was uttered as a forgery. The approval might properly be put in evidence, because it bore directly upon the question of the intent with which the bond was made.

5. The statements made by Hayes before the clerk of the court — that he then called himself Schell, that he described his places of business, his residences, his occupation, and his ownership of a particular house — bore directly upon the identity of the person described as Schell in the bond, and, in connection with the contradiction of them and the proof who the person calling himself Schell actually was, tended to show that the name of Schell was fictitious. The defendant could not, by admitting that the name was fictitious, prevent the government, by any legitimate evidence, from proving it so. *Commonwealth* v. *Miller,* 3 Cush. 243. *Commonwealth* v. *McCarthy,* 119 Mass. 354.

6. The instruction, as requested by the defendant, that the jury must find that Hayes assumed and used the fictitious name of Schell for the purposes of fraud in this particular case; and that it was not enough to constitute forgery if he had previously assumed and used the same name for the purpose of fraud and crime generally, is somewhat ambiguous in its meaning.

If all that was meant by it was that the intent to defraud by the use of the name should be shown to exist in this case, and that it was not enough merely to show that it had been used by Hayes fraudulently before, such instruction should have been given. An assumption of the name generally for the purpose of fraud would not be enough, unless it were also shown that the party used the name, or procured it to be used, fraudulently in the instance charged. Whether the name was used in the particular instance with intent to defraud by a deception as to the identity of the person whose signature is affixed, is always a question of fact for the jury.

The request, however, cannot be construed as intended only to draw the attention of the presiding judge to the familiar principle, that an intent to defraud must be shown in the particular instance. This instruction he could not have failed to give, except by inadvertence. The object of the request was to obtain a ruling that if Hayes had previously assumed the name, and used it for the purposes of fraud generally, and with no reference to this fraud, his use of it would not thereafter be a forgery. That it was so understood by the presiding judge is obvious from the ruling given by him in response, which was in substance that, although a party might sign or use a fictitious name which he had adopted for innocent purposes, he could not acquire a right to use it for fraudulent purposes by using it any number of times for fraudulent purposes. This instruction was correct. The essential element of forgery consists in the intent, when making the signature or procuring it to be made, to pass it off fraudulently as the signature of another party than the one who actually makes it. If this intent thus to personate another exists, the instrument is still a forgery, even if the name affixed is actually the same name with that borne by the party who signs it. So there may be a forgery by the use of a fictitious name, as well as by the use of a person's own name, if the in-

tent exists to commit a fraud by deception as to the identity of the person who uses the name. 2 East P. C. 941, and cases cited. *Mead* v. *Young*, 4 T. R. 28. *Regina* v. *Rogers*, 8 C. & P. 629. *Rex* v. *Whiley*, Russ. & Ry. 90. *Commonwealth* v. *Foster*, 114 Mass. 311. Where a party signs a name not his own, but one which he has adopted, using it without the intent to deceive as to the identity of the person signing, it is not a forgery. *Rex* v. *Bontien*, Russ. & Ry. 260, and cases cited. *Rex* v. *Peacock*, Russ. & Ry. 278, 282.

In *Rex* v. *Bontien, ubi supra,* which is much relied on by the defendant, it was held, after conviction, that it did not sufficiently appear upon the evidence that the prisoner had not before gone by the name he used, or that he had assumed it for the purpose of accepting the bill in question. The question is treated by the court as one of fact, and the case simply holds that, by the mere use of a name not his own, there was not sufficient evidence that the party had sought to deceive as to his identity, he having previously borne the name used. It cannot be considered as sanctioning the position, that, if a party fraudulently uses a false name, or even his own with intent to deceive as to his identity, this is not a forgery.

The previous use of the fictitious name would be evidence that, by the use of it in the case charged, the person so using it did not do so for the purpose of representing himself to be another than the actual signer, just as evidence that he described himself correctly in all particulars as to business and occupation would have a similar tendency. So where one assumes the name of an existing person other than himself, or an entirely fictitious person, and connects it with an entirely false description as applied to himself, it is evidence that the use of the name is one of the acts by which the fraud is carried on, and that it is intended that the credit shall be given not to himself, but to the imaginary person whom he creates and describes, and that he thus uses the name with a view to avoid the responsibility of the act, or to prevent himself from being traced as its author.

*Exceptions overruled.*