# JOHN GRANT LYMAN, Alias HENRY H. HOWE, Alias A. O. BROWN

## vs.

## STATE OF MARYLAND.

### Forgery—Assumed Name—False Pretenses—Worthless Check—Indictment—Evidence.

The offense of forgery may exist even though the name used be an assumed or fictitious one, if it was used with the intention to defraud.                                        pp. 44, 45

An indictment charging one L. with forgery, which refers to him as otherwise called B., in which name the check, which was the subject of the alleged forgery, was signed, is sufficient if it charges the defendant with falsely making the check to which he placed the assumed name of B., with an intention to defraud, although it does not state the facts and circumstances which show that it was signed with such an intention.        p. 46

Whether the name affixed to the check was used in the particular instance with an intent to defraud by a deception as to the identity of the person whose signature is affixed is always a question for the jury.                               p. 47

Act 1914, Ch. 281 (Code, Art. 27, Sec. 123), providing that money or other things of value obtained by the giving of a worthless check shall be deemed to have been obtained by false pretenses, if done with intent to cheat and defraud, does not preclude a prosecution under Section 122 of Article 27, for obtaining a chattel, money or valuable security, by false pretense, with intent to defraud, although this was effected by giving a worthless check.                               pp. 49, 50

In a prosecution for obtaining an article by false pretenses by means of a worthless check, other checks signed by the de-

fendant, in the same way and about the same time, and given to other persons in similar dealings, are admissible as showing intent to defraud, as well as a scheme to obtain goods wherever and from whomsoever he could, by means of such checks.  p. 50

In a prosecution for obtaining goods by false pretenses, by means of a worthless check, evidence that the check was handed by an employee of defendant to the person from whom the goods were obtained is not inadmissible because there was no representation by the employee as to the genuineness of the check. p. 51

*Decided February 18th, 1920.*

Appeal from the Criminal Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Albert S. J. Owens,* for the appellant.

*Albert C. Ritchie, Attorney General, Ogle Marbury, Assistant Attorney General,* and *Harry W. Nice, State's Attorney for Baltimore City,* submitted the cause on brief.

PATTISON, J., delivered the opinion of the Court.

The indictment upon which the appellant, John Grant Lyman, was tried and convicted in the Criminal Court of Baltimore City and sentenced to the Maryland Penitentiary for the term of ten years, consists of three counts.  It was charged in the first

> "that John Grant Lyman, otherwise called Henry H. Howe, otherwise called A. O. Brown, * * * feloniously did falsely make, forge and counterfeit and cause and procure to be falsely made, forged and counterfeited, and willingly aid and assist in falsely making, forging, altering and counterfeiting a certain bill of exchange, to wit, a certain check of tenor, purport and effect following, to wit:

" 'No. 25.              Baltimore, Md., Dec. 7, 1918.
        " 'A. O. Brown,
          " 'Investments.
                                      " '$188.85
     " 'Pay to the order of G. W. Robertson one hun-
dred eighty-eight 85/100 dollars.
     " 'To the American Bank,
     " 'Philadelphia, Pa.                A. O. Brown.'
With intent then and there to defraud," etc.

He was charged in the second count with uttering said
check, and in the third with unlawfully obtaining from the
party therein named by a certain false pretense, bonds issued
and granted by the United States Government.

In response to a demand therefor as to the false pretense
intended to be given in evidence under the third count of
the indictment, the State filed the following bill of particu-
lars:

> "That the said false pretense consisted in the repre-
> sentation that a certain written paper given to Guy
> W. Robertson on the seventh day of December, in the
> year of our Lord nineteen hundred and eighteen, in
> the City of Baltimore, State of Maryland, by May
> Shade, who was then and there the agent of the said
> John Grant Lyman, which said written paper is as
> follows:
> " 'No. 25.              Baltimore, Md., Dec. 7, 1918.
>         " 'A. O. Brown,
>           " 'Investments.
>                                       " '$188.85
>      " 'Pay to the order of G. W. Robertson one hun-
> dred eighty-eight 85/100 dollars.
>      " 'To the American Bank,
>      " 'Philadelphia, Pa.                A. O. Brown.'
> Was then and there a good and genuine check for the
> payment of one hundred eighty-eight dollars and
> eighty-five cents current money and which the said
> John Grant Lyman then and there well knew to be
> worthless and of no value, the said written paper hav-

ing been signed in blank by the said John Grant Ly-
man under the name of A. O. Brown and the blanks
afterwards filled in by the said May Shade in accord-
ance with directions given by the said John Grant
Lyman."

Exceptions filed to the bill of particulars were overruled.
A demurrer was entered to the first and second counts of the
indictment and a motion was filed to quash the third count.
The demurrer, as well as the motion to quash was overruled.
Whereupon the appellant pleaded not guilty and the case
proceeded to trial. In the course of the trial a number of
exceptions were taken to the rulings of the Court upon the
admission of evidence, and at the conclusion of the evidence,
the defendant asked that the State be required to elect upon
which count or counts it desired to ask conviction. This
motion being overruled, an exception to the Court's rulings
thereon was taken.

The chief question presented by this appeal is upon the
ruling of the Court on the demurrer to the first and second
counts of the indictment.

The statute of this State, Section 41 of Article 27 of the
Code, upon the offense of forgery, provides that

"Any person who shall falsely make, forge or coun-
terfeit, or cause or procure to be falsely made, forged
or counterfeited, or willingly aid or assist in falsely
making, forging, altering or counterfeiting any * * *
bill of exchange * * * with intention to defraud any
person whomsoever, or shall utter or publish as true
any false, forged, altered or counterfeited * * * bill of
exchange * * * shall be deemed a felon, and on being
convicted thereof shall be sentenced to the peniten-
tiary for not less than one nor more than ten years."

It will be seen by a comparison of the statute with the
first and second counts of the indictment that the forgery
therein charged is in the language of the statute. The true
name of the defendant, as charged in the indictment, is John

Grant Lyman, while the name "A. O. Brown," appearing to the check, was an assumed name used by the defendant in his alleged purpose or intent to defraud.

The contention is made that as the defendant used an assumed or fictitious name, not the name of another person, the offense of forgery was not committed. This question, though decided by the English Courts and other Courts of this country, has never been before this Court, so far as we have been able to discover, but by the great weight of authority both in England and this country it is now, we think, well settled that the offense of forgery may exist even though the name used be an assumed or fictitious one, when it is shown that it was used with the intention to defraud. *Rex* v.*Sheppard,* 1 Leach, C. C. 226; *Rex* v. *Whiley,* R. & R. C. C. 89; *Rex* v. *Marshall,* R. & R. C. C. 75; *Rex* v. *Francis,* R. & R. C. C. 209; *Rex* v. *Boland,* 1 Leach, C. C. 83; *Rex* v. *Taylor,* 1 Leach C. C. 214; *Wharton's Criminal Law,* Vol. 1, Sec. 659; *Commonwealth* v. *Costello,* 120 Mass. 370; *State* v. *Wheeler,* 20 Ore. 192, 10 L. R. A. 779; 13 *A. & E. Enc. of Law* (2nd Ed.) 1088; *State* v. *Kelliher,* 49 Ore. 77; *Maloney* v. *State,* 91 Ark. 485, 18 A. & E. Ann. Cases 480; *Harmon* v. *Old Detroit Nat. Bank,* 153 Mich. 73, 17 L. R. A. 514; *U. S.* v. *Turner,* 7 Pet. (U. S.) 132( 8 L. Ed. 633), 12 R. C. L. 151.

In the early case of *Rex* v. *Sheppard, supra,* the defendant bought silverware of the prosecutor and in payment therefor gave to him a draft endorsed with the name of "H. Turner, Esq.," his true name being Sheppard. The prosecutor testified that he gave credit to the prisoner not to the draft, the prisoner being a stranger to him. The jury found the prisoner guilty, and on a case reserved on the question whether it could amount to the crime of forgery, as the prosecutor had sworn that he gave credit to the prisoner not to the draft, the twelve judges were unanimously of the opinion that the conviction was right; "for it was a false instrument not drawn by any such person as it purported to be and the using of the fictitious name was only for the purpose of deceiving."

The same question was also decided in the later case of *Rex* v. *Whiley, supra.* There it was said (quoting from the syllabus), "where the name made use of by the prisoner in the forged instrument was assumed by him with intention of defrauding the prosecutor, a conviction for forgery was held to be right though the prisoner's real name would have carried with it as much credit as the assumed name," and to the same effect are the cases of *Rex* v. *Francis, Rex* v. *Marshall, Rex* v. *Boland* and *Rex* v. *Taylor.*

In *Wharton's Criminal Law,* Vol. 1, Section 659, it is said, "it is forgery to sign a money order in an assumed name, if the name were assumed to defraud the person to whom such order was given, though the prisoner was known to the prosecutor only by the assumed name." In support of this statement, he cites the case of *Rex* v. *Francis, supra.*

The principle laid down in these early English cases was followed in *Commonwealth* v. *Costello, supra,* where it is said "there may be a forgery by the use of a fictitious name, as well as by the use of a person's own name, if the intent exists to commit a fraud by deception as to the identity of the person who uses the name."

In the still later case of *State* v. *Wheeler, supra,* decided in December, 1890, the Supreme Court of Oregon, after citing and quoting approvingly from a number of the cases that we have cited, including *Commonwealth* v. *Costello,* held that a promissory note given by the defendant, Edward Wheeler, in the name of John Williams, a fictitious person, with an intent to defraud, was forgery.

In 13 *A. & E. Enc. of Law,* page 1088, it is said, "to constitute forgery, the name alleged to be forged need not be that of any person in existence. It may be wholly fictitious, if the instrument is made or altered with the intent to defraud"; and in the case of *Maloney* v. *State, supra,* decided so late as October 4th, 1909, the Supreme Court of Arkansas quoted with approval what is said in 13 *A. & E. Enc. of Law.*

In the case of *U. S.* v. *Turner, supra,* the party was charged with the forgery of and attempt to pass a certain

paper writing in imitation of and purporting to be a bill or
note issued by the President, Directors and Company of the
Bank of the United States. The note was signed with the
name of John Huske, who had not been at any time the
President of the Bank of the United States, and was counter-
signed by the name of John W. Sandford, who at no time was
cashier of the bank, although both of said persons were in-
directly connected with said bank in other capacities. JUDGE
STORY, speaking for the Court in that case said, "it is wholly
immaterial whether the bill, attempted to be passed, be signed
in the name of real or fictitious persons or whether it would,
if genuine, be binding on the bank or not. * * * The public
mischief would be equally great, whether the names were
those of the genuine officers, or of fictitious or unauthorized
persons. * * *

"Upon examining the English authorities upon the subject
of forgery and the utterance of counterfeit paper they appear
to us fully to justify and support a similar doctrine. It is,
for instance, clearly settled that the making of a false instru-
ment, which is the subject of forgery, with a fraudulent in-
tent, although in the name of a non-existing person, is as
much a forgery as if it had been made in the name of a per-
son known to exist, and to whom credit was due."

The indictment, charging John Grant Lyman with the
commission of the offense, refers to him as otherwise called
A. O. Brown, whose signature is affixed to the check, and
because of this fact, the defendant contends that the facts
and circumstances under which that name was placed to the
check, showing by its use an intention to deceive, should
have been disclosed by the indictment. This in our opinion
was not necessary. The indictment, which is in the language
of the statute, charges the defendant with falsely making the
check to which he placed the assumed name of A. O. Brown,
with an intention to defraud. Whether the check was made
with fraudulent intention was a matter for the jury to deter-
mine after hearing the facts and circumstances under which

it was signed, but it was not essential to the sufficiency or validity of the indictment that it should contain such facts and circumstances.

As was said in *Commonwealth* v. *Costello, supra,* "whether the name was used in the particular instance with an intent to defraud by a deception as to the identity of the person whose signature is affixed is always a question for the jury."

The third count in the indictment, which is known in these proceedings as the false pretense count, charged that

> "John Grant Lyman, otherwise called Henry H. Howe, otherwise called A. O. Brown, * * * by a certain false pretense by him then and there made to Guy W. Robertson with intent then and there to defraud, he, the said John Grant Lyman, otherwise called Henry H. Howe, otherwise called A. O. Brown, then and there well knowing the said pretense to be then and there false (which said false pretense was not then and there a mere promise for future payment, and was not then and there a mere promise for future payment not intended to be performed), unlawfully, knowingly and designedly did obtain from Guy W. Robertson four bonds, issued and granted by and under the authority of the United States, each bond of the value of fifty dollars current money, of the goods and chattels, moneys and property of Guy W. Robertson."

This count of the indictment is based upon Section 122 of Article 27 of the Code, which provides that

> "Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor, and being convicted thereof shall be liable, at the discretion of the court, to be punished by fine and imprisonment, or by confinement in the penitentiary for not less than two years nor more than ten years, as the court shall award; * * * provided * * * that a mere promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section."

Section 498 of Article 27 of the Code provides that

"In any indictment for false pretenses it shall not
be necessary to state the particular false pretenses in-
tended to be relied on in proof of the same, but the
defendant, on application to the State's Attorney be-
fore the trial, shall be entitled to the names of the wit-
nesses and a statement of the false pretenses intended to
be given in evidence."

The defendant availed himself of the right conferred upon
him by the aforegoing section of the Code and asked for a
bill of particulars as to the false pretense intended to be
given in evidence under such count of the indictment. The
State in response thereto filed a bill of particulars, which
we have already set out in this opinion.

In the bill of particulars it is alleged that the false pre-
tense "consisted in the representation" that the check above
mentioned and referred to, signed by the defendant in the
name of A. O. Brown and given to Guy W. Robertson by
one May Shade, agent of the said defendant, *"was then and
there a good and genuine check"* for the payment of the
amount therein stated, etc., "and which the said John Grant
Lyman then and there well knew to be worthless and of no
value."

The defendant excepted to the bill of particulars because,
as we understand him, the disclosures made by it involved
the giving of a check upon a bank in which the defendant
had no funds from which it could be paid, his contention
being that since the passage of the Act of 1914, Chapter 281,
which is now Article 27, Section 123 of the Code, there can
be no prosecution under Section 122, where the giving of a
worthless check is involved, but in all such cases the prosecu-
tion must be under Section 123. This, in our opinion, is
not the effect of the passage of that Act.

Section 123 provides that

"Every person who, with intent to cheat and de-
fraud another, shall obtain money, credit, goods, wares

or anything of value by means of a check, draft or any other negotiable instrument of any kind drawn upon a bank, person, firm or corporation, not indebted to drawer, or where he has not provided for the payment or acceptance, and the same be not paid upon presentation, shall be deemed to have obtained such money, credit, goods or things of value by means of a false pretense, and upon conviction shall be fined or imprisoned, or both, as provided in Section 112 of this Article, at the discretion of the court. The giving of the aforesaid worthless check, draft or negotiable instrument shall be *prima facie* evidence of intent to cheat or defraud; provided that if such person shall deposit with the drawee of such paper within ten days thereafter funds sufficient to meet the same, with all costs and interest which may have accrued, he shall not be prosecuted under this section, and no prosecution either by presentment, indictment or otherwise, shall be instituted or commenced until after the expiration of said period of ten days."

This statute in substance provides that money or other things therein named, obtained by the giving of a worthless check or other instrument, as therein stated, shall be deemed to have been obtained by means of false pretenses, where the same was done with the intention to cheat and defraud, and "the giving of the aforesaid worthless check, draft or negotiable instrument shall be *prima facie* evidence of intent to cheat or defraud," subject to the provision that follows. By both statutes there must be an intent to defraud.

In Section 122, the burden of showing such fraudulent intent is on the State, while in Section 123, the burden shifts to the defendant, when it is shown that a worthless check has been given, as stated in that section, because of the provision therein contained that the existence of such facts shall be *prima facie* evidence of the intent to cheat or defraud.

The effect of Section 123 is to relieve the State of the burden of proving such intent to defraud, when certain facts

mentioned in the statute are shown to exist, but it was never intended that because a worthless check was involved in the fraudulent transaction, the defendant could not be prosecuted under Section 122, when the State was ready and willing to assume the burden of showing the existence of such intent to defraud by evidence such as false statements of the defendant as to existing facts made in connection with the giving of the check.

It could hardly have been the intention of the Legislature to confine the prosecution in such cases to Section 123, when under that section "no prosecution either by presentment, indictment or otherwise, shall be instituted or commenced until after the expiration of said period of ten days." In that time opportunities of escape would be afforded the offender, and in many instances, he, by reason of such delay, would evade prosecution, although it could have been shown, if tried under Section 122, that he had made in connection with the giving of such worthless check many false statements as to existing facts, clearly showing an intent to cheat and defraud. Such could not have been the intention of the Legislature. The Court, we think, acted properly in overruling the exception to the bill of particulars. In view of what we have said of the exception to the bill of particulars, it is not necessary to discuss the correctness of the action of the Court in overruling the motion to quash the third count of the indictment, even should there be an appeal therefrom.

This brings us to the rulings upon the evidence. The defendant in his brief refers only to the third, fourth, fifth, sixth and eighth bills of exceptions. The third bill of exceptions was taken to the admission in evidence of the check to Robertson, which is mentioned in the indictment. There can be no question as to the admissibility of the check, in view of what we have said upon the demurrer to the first and second counts and the exception to the bill of particulars.

The fourth and fifth exceptions were to the admission of other checks signed by the defendant in the same way and

about the same time and given to other persons in similar dealings. These were admissible as showing the defendant's intent to defraud, as well as "a scheme to obtain goods wherever and from whomsoever he could," by means of such false checks. *Carnell* v. *State,* 85 Md. 6.

In the sixth bill of exceptions, the defendant asked the Court to strike out all the testimony of Miss Shade "in so far as the same may be offered to sustain the third count of the indictment." This motion was overruled and the testimony allowed to remain in. The reason assigned by the defendant for striking out this testimony was because it was at variance with the bill of particulars. Just what the variance is is not stated except in the plaintiff's brief where it is said "no representation having been proven to have been made by Miss Shade, this evidence could not properly have been admitted to sustain the third count of the indictment." Even though her evidence contained no such representation made by her, this would not warrant the exclusion of her testimony, which was otherwise relevant and material as tending to sustain the charge of false pretenses, and it should not have been stricken out.

The eighth exception was taken to the ruling of the Court in refusing to strike out the testimony of Robertson upon a like motion made by the defendant. The ruling of the Court thereon, we think, was proper, in view of what we have said as to the sixth exception.

In his brief, the defendant makes no reference to the seventh, ninth and tenth exceptions, but in the rulings of the Court thereon, we find no reversible error.

The judgment of the Court below will, therefore, be affirmed.

*Judgment affirmed, with costs.*