157 N.J. Super. 265 (1978)
384 A.2d 906
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACK THRUNK, A/K/A JOHN P. THRUNK, A/K/A JACK TRUNK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided March 15, 1978.
*268 Before Judges ALLCORN, MORGAN and HORN.
*269 Mr. Steven P. Perskie argued the cause for appellant.
Mr. Anthony J. Parrillo, Deputy Attorney General, argued the cause for respondent (Mr. John Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General).
PER CURIAM.
In 1974 a grand jury found four indictments against defendant Jack Thrunk. Each charged him with forging and counterfeiting a different deed, contrary to N.J.S.A. 2A:109-1. A lengthy trial to a jury, commencing February 23, 1976 and terminating on March 4, 1976, resulted in his being convicted on one indictment and in his being acquitted on the other three indictments.
The deed for the alteration of which defendant was convicted had been executed by First National City Bank in a number of fiduciary capacities, including one as a surviving executor under the will of Archibald D. Russell, deceased (bank deed). On June 4, 1976 the judge denied defendant's motion for a new trial and imposed a fine of $2,000, a suspended term of one to two years in State Prison and probation for a period of two years. Defendant filed a timely appeal of his conviction.
All four deeds purported to convey certain lands and interests therein to the grantee, Mo-Park Industries, Inc. (Mo-Park). Mo-Park owns and operates a mobile home development on a 38-acre tract of land which had been owned by the Russell estate. Defendant had been employed by Mo-Park as a construction consultant and foreman from 1961 to 1971. Thereafter he was not on the payroll but remained in contact with the company, coming to the office practically every day and occasionally picking up mail. Defendant owns two percent of the shares of Mo-Park.
Prior to May 1974 Mo-Park decided it wished to purchase the property on which it operated its mobile-home development from the Russell estate as well as from other title-holders. Defendant was familiar with title searching and *270 located the principal heirs. He turned this information over to the company's attorney. Mo-Park successfully negotiated with First National City Bank for a portion of the property. Defendant went to New York City, where he received from the attorney for Mo-Park all four deeds which were later altered, with instructions to record them at the Ocean County Courthouse as soon as possible. The discrepancy in the deeds came to light during subsequent negotiations between an attorney for said bank and an attorney representing a descendant of Archibald Russell. At that time it was noticed that the original versions of the deeds drafted by said attorney differed from those which had been recorded. On all four deeds changes were made on the first page, in the witnessing part. We need refer only to the change in the bank deed. That part, as pertinent, originally read:
The parties of the first part * * * have remised, released and forever quit-claimed, and by these presents do hereby remise, release and forever quit-claim to the said party of the second part, all that right, title * * *.
This clause was followed by a precise description of the property by metes and bounds. The above-quoted portion of the deed was altered to read:
WITNESSETH, the parties of the first part * * * have and by these presents do release and forever quit claim to the party of the second part, its successors and assigns, all rights, title and interest that the parties of the first have or may have in all lands described on page 421 of Book S 22, recorded in the Office of the Surveyor General, and in particular but not limited to

* * * * * * * *
The same metes and bounds description of the property remained.
At the trial three expert witnesses expressed conflicting opinions as to the effect of the alteration of the deeds. From that testimony the jury could have found that the alteration *271 of the bank deed resulted in the inclusion therein of a larger quantity of land than is described in the original deed.
Defendant first contends that the trial judge erred in his rulings restricting testimony as to "title" to the various parcels and in charging the jury that "each first page [of the respective deeds] was materially or falsely altered."
N.J.S.A. 2A:109-1 provides, in pertinent part:
Any person who, with intent to prejudice, injure, damage or defraud any other person:
a. Falsely makes, alters, forges or counterfeits any record or other authentic matter of a public nature or character, or any printed or written instrument or indorsement, acceptance, transfer or assignment thereof; * * *.
* * * * * * * *
Is guilty of a high misdemeanor.
Defendant's contention under this point appears to be twofold: first, that the judge erroneously charged the jury that the alteration was material; second, that the State failed in its proof to establish materiality in the sense that the instrument, as altered, if genuine would operate as the basis of another's liability.
We take up the first point  as to the court's charge that the alteration was a material one. The crime of forgery has generally been defined as the "`false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently [emphasis added] be of legal efficacy, or the foundation of legal liability.' Hubsch v. United States, 256 F.2d 820, 823 (5 Cir. 1958); 23 Am. Jur., Forgery (1939), § 2, p. 676." State v. Berko, 75 N.J. Super. 283, 290 (App. Div. 1962). See also, State v. Ruggiero, 43 N.J. Super. 156, 159 (App. Div. 1956), aff'd o.b. 25 N.J. 292 (1957).
If the instrument is one which on its face would be manifestly void or of no legal effect even if genuine, it is no forgery. 2 Wharton's Criminal Law and Procedure, § 643 at 431 (Anderson 1957). As held in State v. Robinson and *272 Chittenden, 16 N.J.L. 507, 509 (Sup. Ct. 1838), the alteration must be of a material part of the instrument, "for no alteration of a genuine instrument will amount to this crime unless it changes the operation and effect of the instrument." See also, State v. Redstrake, 39 N.J.L. 365, 369 (Sup. Ct. 1877). A charge of forgery must be predicated upon an instrument which has real or apparent efficacy to injure. 2 Wharton's op. cit., at 433. As stated in 37 C.J.S. Forgery § 12 at 41:
In order that an alteration may constitute forgery it is essential that it be material. A material alteration of an instrument within the meaning of the rule is one which makes it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing.
In the case at bar defendant admitted that all four deeds had been altered. He denied, however, that he had done the altering. He did not dispute the fact that the lands described on page 421 of Deed Book S22 were greatly in excess of those described in the metes and bounds description in the Bank deed. As stated, the judge had permitted the expert witnesses to testify as to the apparent legal effect of the alteration. Defendant's expert expressed an opinion that the alteration did not have the legal effect of conveying any more land than that contained in the metes and bounds description. In effect, he testified that the alteration was not a material one.
It is a settled rule that interpretation of written instruments is a matter of law for the court in the absence of any ambiguity therein. Hofer v. Carino, 4 N.J. 244 (1950); Pearce Co. v. Beverly Beach, Inc., 107 N.J.L. 73 (E. & A. 1930). And where no disputed question of fact material to the issue is present, it is not error for the court to instruct the jury as to the legal effect thereof  even if the undisputed fact constitutes an element of the crime allegedly committed by defendant. State v. Schneiderman, *273 20 N.J. 422 (1956); State v. Mack, 131 N.J. Super. 542, 546 (App. Div. 1974). See also Rohr v. State, 60 N.J.L. 576, 578 (E. & A. 1897), where the court approved a trial judge's charge to the jury "that the alteration of the checks * * * amounts to a forgery provided the jurors find, as a matter of fact, the alterations were made with an intent to defraud * * *."
In 37 C.J.S. Forgery § 105 at 106, it is stated:
* * * The materiality of the alteration charged is a question of law for the court, as is the interpretation of the writing. * * * The efficacy of the instrument to perpetrate a fraud is a question of law for the court, but, under certain circumstances, it may be a question of fact for the jury.
We find no circumstances here which alter these principles. We are satisfied that the judge's interpretation of the deed as altered was correct. The relevant wording was not ambiguous and the effect of the mutation was to make the deed appear to convey more land than the original deed purported to convey.
We agree that the court was inconsistent in permitting expert testimony as to the materiality and then charging that the alterations were material as a matter of law. But the error was harmless, or perhaps even benefited defendant. We conceive that the jury may have acquitted defendant of the charges based on the alterations of the other three deeds as the result of the expert testimony. For these reasons we conclude that the judge did not err in this aspect of his charge.
We find that defendant's second contention under this point lacks substance. Defendant stresses that the proofs were deficient because the State failed to introduce testimony "as to the title to, or ownership of, the additional land covered by the description on p. 421 of Deed Book S22." Because of this failure of proof, he asserts that "there is no testimony whatever upon which [a] conclusion could be based that the altered version of the deed has the capacity *274 to effectuate a deprivation of anyone's right, title, or interest in or to any parcel of property."
Defendant claims that State v. Redstrake, supra, supports his thesis. The court there stated:
The very act of forgery itself will be sufficient to imply an intent to defraud, or, at all events, it will be sufficient if, from the circumstances of the case, the jury can fairly infer that it was the intention of the party to utter the forged instrument. If, however, it appear that no fraud whatever could have been effected by the forgery, then no fraud could be intended, and the defendant will be entitled to an acquittal. Arch. Crim. Pl. and Pr., vol., II, p. [*]546. [39 N.J.L. at 369-370]
But Redstrake turned upon the failure of the State to prove an intent to defraud. As the court observed:
The scheme [of defendant] is too chimerical to receive consideration, and there is nothing in the evidence to show that, by the presentation, any one could have been defrauded by the supposition that the endorsements upon the notes were true. [At 371; emphasis supplied]
In the instant case someone could have been defrauded  either the actual owner of the land or someone who relied upon the genuineness of the deed as altered  a mortgagee, a purchaser or other person or entity.
West v. State, 22 N.J.L. 212 (Sup. Ct. 1849), more specifically refutes defendant's argument. Defendant there argued that his conviction of forgery by altering a deed should be reversed because the indictment contained no averment that the party who allegedly was intended to be defrauded had title or any interest in the land described in the deed. The forgery statute then in force (Rev. Stat., 271, § 248) was substantially similar to our present statute (22 N.J.L. at 234).
The court rejected defendant's challenge, holding that the statute proscribed the alteration if it was done with intent to defraud anyone (West, supra at 234). It said:
*275 * * * To limit its operation to persons having an interest in the same, or any other land, would greatly narrow its operation, and defeat its most important objects. It would be, moreover, in direct contravention of the plain language of the act. In order to put such construction upon the statute, it would be necessary to show that no one could be defrauded by a forged deed, unless he had an interest in the land pretended to be conveyed, or in some other land, to the prejudice of which the forged instrument might operate. But it is too obvious to admit of controversy, that fraud, by means of a false or forged deed, may be committed, not only upon the person having title to the land, but more readily and more certainly upon persons who are induced to loan or advance money upon the faith of the pretended title. Such cases come clearly within the plain terms and obvious meaning, and, as we apprehend, within the effect and operation of the statute. [22 N.J.L. at 234-235]
In State v. Ruggiero, supra, defendant was charged with forgery in affixing the name of a fictitious maker to a check. After entering a plea of non vult, defendant unsuccessfully applied to the court to vacate his sentence. We upheld the decision denying the motion to vacate the sentence, stating:
* * * The fraudulent making of a writing which if genuine would, or on its face might be, of some legal effect upon the rights of others, is, if made with intent to defraud another, in essence a forgery comprehended by the common law and by our statute.
Here a false negotiable instrument for the payment of money or for a monetary credit is created by the forging or by the untrue imitation thereon of the apparent signature of a fictitious, unknown, or non-existent maker with the deliberate intent to utilize it to defraud someone. Such an act constitutes the commission of the crime of forgery. 37 C.J.S. Forgery § 10, p. 39; 23 Am. Jur. 681, § 12. See particularly, Lyman v. State, 136 Md. 40, 109 A. 548, 9 A.L.R. 401 (Ct. App. 1920), and authorities therein cited. [43 N.J. Super. at 159; emphasis supplied]
In stating that the offense is committed when the false writing "on its face might be" of some legal effect upon the rights of others, the court laid emphasis upon the potentiality for harm, rather than requiring a showing that it had been caused.
These same principles were reiterated in State v. Berko, supra. There the court observed that:
*276 Forgery has also been said to have a "broad" as well as a "narrow" definition with respect to the use of a fictitious or assumed name. The broad definition applies in a majority of jurisdictions, where it is settled that forgery may be committed by executing, or procuring to be executed, a written instrument in a fictitious or assumed name with intent to defraud. Annotation, "Forgery: use of fictitious or assumed name," 49 A.L.R.2d 852 (1956) (cases supporting this rule are cited at pp. 856-863). The broad definition has been adopted by New Jersey. State v. Ruggiero [supra, 43 N.J. Super. at 159]; 2 A.L.R.2d Supplemental Service (1960), p. 3192. The narrow definition states that forgery is committed when one, with intent to defraud, falsely makes or alters an instrument in writing so as to make it appear that such an instrument is that of one other than the person actually making it. Green v. State, 76 So.2d 645, 49 A.L.R.2d 847, 850 (Fla. Sup. Ct. 1954); Annotation, 49 A.L.R.2d, supra, at p. 863 for cases supporting this rule. [75 N.J. Super. at 290-291]
Our Supreme Court more recently had occasion to deal with this subject in State v. Schultz, 71 N.J. 590, 597-600 (1976). The court there stated that a defendant was "not excluded from the operation of the statutory proscription [N.J.S.A. 2A:109-1(a)] merely because the naked endorsed signature, `Michael Arnold,' might not as a matter of law effect negotiability of a check made payable to Municipal Court." (At 598) The court expressly rejected the view that the defendant could not be found guilty of forging an endorsement upon a check because the forged endorsement (quoting from Carr v. United States, 278 F.2d 702, 703 (6 Cir.1960)) "`was legally insufficient to pass title to another person or to permit [the check] to be cashed by the holder.' (emphasis added)." (71 N.J. at 599)
We have no reason to denigrate the holding of West v. State, supra. The forgery cases which we have mentioned sustain the continued viability of that holding. See also, 37 C.J.S. Forgery § 27 at 50, wherein it is stated: "A deed of land may be the subject of forgery, although it purports to grant land to which the grantor had no title or interest, although the purported grantor was a fictitious person or is dead * * *," and 2 Wharton's Criminal Law & Procedure (Anderson 1957), § 641 at 424-429.
*277 Defendant next contends that the verdict must have been the result of passion, prejudice or compromise.
There is no suggestion of passion or prejudice. Defendant suggests that there was no, or very little, evidence from which it logically could be concluded that defendant had altered one but not all four of the deeds.
Consistency in verdicts, however, is not required. State v. Still, 112 N.J. Super. 368 (App. Div. 1970), certif. den. 57 N.J. 600 (1971). Still held:
* * * [T]he modern and majority rule is that consistency between the verdicts on the several counts of an indictment or on several indictments, each charging substantially the same offense, is unnecessary where defendant is convicted on one or some counts or indictments but acquitted on others. Such a conviction will generally be upheld irrespective of its rational incompatibility with the acquittal. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); see Annotation, 18 A.L.R.3d 259, 274 and cases cited therein. * * * [at 373]
As already noted, a plausible explanation for the verdicts is furnished by the differences in testimony of the expert witnesses. Two of the three experts agreed that the alteration of the Bank deed was effective to convey additional property. Two of the three experts agreed that the alterations in the other deeds did not effectively convey additional property.
Defendant finally urges that the indictments should have been dismissed by reason of the insufficiency and incompetency of the evidence upon which they were based, and because of improper conduct on the part of the assistant prosecutor while before the grand jury.
R. 3:10-2 provides that all defenses and "objections based on defects in the institution of the prosecution or in the indictment or accusation * * * must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver." Prior to trial defense counsel objected to the contents of the three indictments *278 which defendant was later acquitted of having forged. The allegations now raised could have been raised at that time, but were not presented. The issue is not of sufficient importance to merit relaxation of the rule. Cf. State v. Juliano, 97 N.J. Super. 28, 33 (App. Div. 1967), mod. 52 N.J. 232 (1968).
Notwithstanding the failure of defendant to make a timely objection as to the alleged deficiencies in the indictment, we have carefully considered his arguments and find that they are contrary to our views. He asserts that the indictments should have been dismissed because they were founded on hearsay evidence presented to the grand jury and also because an assistant prosecutor expressed his personal opinion as to whether there had been an alteration in a deed.
It is settled that a grand jury may return an indictment based largely or wholly on hearsay testimony. State v. Ferrante, 111 N.J. Super. 299, 304 (App. Div. 1970). Our review of the record discloses that the assistant prosecutor, instead of permitting the grand jury to rely upon anything that he said, told the grand jury that it would hear the testimony. "It is not my opinion." Clearly, there was no attempt on the part of the assistant prosecutor to persuade the grand jury to base its determination on any opinion of his.
Defendant also contends that there was a misstatement of fact to the grand jury by a witness concerning the inspection of the Mo-Park typewriters. This contention is completely frivolous, because the fact allegedly misstated was not even established at the trial.
Concluding as we do that none of defendant's contentions is meritorious, the conviction is
Affirmed.